STATE of Iowa, Appellee,

v.

Edward LARMOND, Appellant.

No. 57595.

Supreme Court of Iowa.

June 30, 1976.

William R. Tysseling, Ames, for appellant.

Richard C. Turner, Atty. Gen., William D. Scherle and Steven K. Sandblom, Asst. Attys. Gen., and Ruth R. Harkin, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

The difficult issue in this appeal is whether trial court's indications of personal bias and prejudice during the course of a jury criminal trial necessitate a reversal and new trial. We so hold and accordingly reverse and remand.

Defendant was charged by county attorney's information with forgery in violation of § 718.1, The Code. Although State's evidence was not strong, the jury could have found defendant and a male companion were instrumental in persuading a female acquaintance to forge a stolen check in payment for valuable stereo equipment obtained from an Ames store.

Following a guilty verdict sentencing was scheduled for July 9, 1974. It was later rescheduled for July 16, a Tuesday. On that date court-appointed trial counsel, appearing with defendant, asked for a continuance. Counsel stated he had told defendant on Thursday of the prior week he would not file a motion for new trial and pre-

ferred to withdraw rather than file it. Defense counsel informed the court defendant had attempted to obtain but had been unable to contact another lawyer who had been out of town Thursday through Sunday.

Trial court's refusal to grant a continuance for the purpose of obtaining different counsel to file motion for new trial was challenged by defendant in his initial brief. Our order for limited remand allowed defendant 15 days to file the motion in district court, and fixed appropriate time schedules for hearing below and supplemental briefing in this court if the motion was overruled.

Defendant's new trial motion, filed by different counsel, alleged, *inter alia*, instances of judicial misconduct which "created prejudice against the Defendant in the eyes of the jury depriving the Defendant of a fair and impartial trial  *  *  *."

Upon submission of the motion defendant, in support of the allegations made, offered testimony of his court-appointed trial counsel, another attorney appointed to represent defendant's male companion, and a lawyer who had served as a law student legal intern in the county attorney's office when the case was tried. The latter two witnesses observed most of the two-day trial.

All three witnesses were in substantial agreement in testifying that trial court, in administering the oath and dismissing witnesses, treated the State's witnesses with courtesy and solicitous attention but treated the defense witnesses curtly and with obvious disdain. The judge thanked State's witnesses for their testimony. Defense witnesses were summarily dismissed with the judge "speaking in a gruff tone of voice with words like 'that's all, get down from there.'"

The witnesses agreed that during the testimony of State's witnesses the judge often smiled, "nodding his head up and down in agreement, muttering or murmering like 'Uh-hum'  *  *  *." The judge frequently expressed disapproval or disbelief of defense witnesses by "a shaking, a negative indication of the head" and an audible sound "Hump!" and "Hu!" and "No."

The witnesses testified that during the State's jury argument defendant leaned over at the counsel table to whisper to his lawyer. His counsel testified, "[i]t involved something that he would desire me to say in closing argument. I do not feel that the defendant did anything more than whisper. I felt it was barely audible even to myself and certainly not disruptive of the court room." Nonetheless, trial judge pounded his fist on the bench, extended his arm, and pointing his finger at defendant said, "See here, be quiet! You should not interrupt the county attorney while he's presenting his argument to the jury."

The State presented no rebutting evidence. Trial judge, in overruling the motion, made only the following finding:

"The court finds that the defendant has not shown in fact that there was any prejudice to any juror. The court hearing arguments of counsel as to other matters set out in the motion for new trial, the court is of the opinion that each and every point in the motion is hereby denied."

Defendant's supplemental brief filed here asserts trial court's adverse ruling on his new trial motion was in error in that 1) he was deprived of a fair and impartial trial, 2) the State failed to prove the check in question was signed without authority, and 3) the court's reasonable doubt instruction to the jury was fatally defective. The first ground relied on for reversal is dispositive of this appeal.

I. A fair trial in a fair tribunal is a basic requirement of constitutional due process. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955). It follows a presiding judge should not only be fair and impartial, he must conduct himself in the trial to constantly manifest those qualities. *Wilson v. Ceretti*, 210 N.W.2d 643, 645 (Iowa 1973); Iowa Code of Judicial Conduct, Canon 3, Standards A(1), (3), C(1). A trial judge should project "that atmosphere of austerity which should especially

dominate a criminal trial and which is indispensable for an appropriate sense of responsibility on the part of court, counsel and jury." *Offutt v. United States*, 348 U.S. 11, 17, 75 S.Ct. 11, 15, 99 L.Ed. 11, 18 (1954); see *United States v. Dellinger*, 472 F.2d 340, 385–391 (7 Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973).

We have frequently said a presiding judge must avoid any conduct by which the jury could infer bias against either party, *State v. Thornburgh*, 220 N.W.2d 579, 585 (Iowa 1974); *State v. O'Kelly*, 211 N.W.2d 589, 596 (Iowa 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *State v. Kimball*, 176 N.W.2d 864, 867 (Iowa 1970), noting jurors are particularly sensitive to a judge's views, and the revelation of his feelings toward the parties, counsel and witnesses might influence the jury more than the evidence. *State v. Johnson*, 243 N.W.2d 598 (Iowa 1976); *State v. Grady*, 183 N.W.2d 707, 711 (Iowa 1971); *State v. Kimball*, supra.

In this jurisdiction a court presiding in a jury trial cannot comment on the facts. *State v. Robinson*, 165 N.W.2d 802, 806 (Iowa 1969); *State v. Philpot*, 97 Iowa 365, 370, 66 N.W. 730, 732 (1896). A defendant has a right to a jury verdict on the issue of his guilt, uninfluenced by any intimation, direct or indirect, of the presiding judge's views. See *Bierkamp v. Beuthien*, 173 Iowa 436, 440, 155 N.W. 819, 820 (1916).

It follows a trial court may not telegraph to a jury, by purposeful exclamations, gestures or facial expressions, his approval or disapproval, belief or disbelief, in the testimony of witnesses or arguments of counsel. See *Veal v. State*, 196 Tenn. 443, 446, 268 S.W.2d 345, 346 (1954); Annot., 49 A.L.R.3d 1186, 1187 (1973); 75 Am.Jur.2d, Trial § 104, pp. 202–203.

Turning to the case before us, it is apparent trial court's conduct during examination of witnesses violated these principles. His deprecatory and hostile attitude toward the defense, as well as his partisan zeal for the prosecution, in the courtroom and before the jury, is evident from the careful and factual record made on submission of the motion. The impact of this activity on the concept of a fair and impartial trial, frequently a fragile vessel at best, had to be devastating.

The extreme admonition administered to defendant as he attempted to whisper to his lawyer in the course of the jury arguments was prejudicial and unnecessary. The constitutional right to be represented by counsel includes defendant's right to conference with an attorney. Such right to confer is at no time more important than during the progress of a trial. *People v. Zammora*, 66 Cal.App.2d 166, 152 P.2d 180 (1944). While a presiding court should maintain good order and suppress unseemly conduct, it is reversible error to excoriate a defendant in the presence of the jury without just cause. *Ladnier v. State*, 254 Miss. 469, 474, 182 So.2d 389, 391 (1966).

The record before us conclusively demonstrates the trial judge, because of his obvious personal bias and prejudice, was in fact disqualified from trying this case. *Knapp v. Kinsey*, 232 F.2d 458, 465–466 (6 Cir.), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956); *Whitaker v. McLean*, 73 App.D.C. 259, 118 F.2d 596 (1941); see *State v. Johnson*, 243 N.W.2d 598 (Iowa 1976).

Nor do we feel in these circumstances defendant was required to show (as indicated by trial court's ruling) the jurors were actually prejudiced. It is enough that we find the mantle of impartiality indispensable to a trial court's function was discarded "thereby demolishing the defendant's credibility, his presumption of innocence, and any chance whether guilty or innocent, that he had of a successful defense * * *." *State v. Johnson*, supra, 243 N.W.2d at 603, quoting from *Mechling v. Slayton*, 361 F.Supp. 770, 774 (E.D.Va. 1973). We are slow to hold matters calculated to arouse prejudice are non-prejudicial in a criminal case. *State v. Kimball*, supra, 176 N.W.2d at 867.

II. There remains the more difficult problem created by court-appointed trial counsel's failure to object to the judge's

judicial misconduct. We have held even important constitutional rights may be waived by defendant's failure to object to trial irregularities as soon as possible. *State v. Coffee*, 182 N.W.2d 390, 395 (Iowa 1970).

█ A proper procedure in these circumstances would have been for counsel promptly to have made a record in chambers of the offending conduct coupled with an objection, see Annot., 49 A.L.R.3d 1186 § 2(b), pp. 1189–1190, or by objection supported by a bill of exceptions, rule 241, Rules of Civil Procedure. See *State v. O'Kelly*, supra, 211 N.W.2d at 596–597; *State v. LaMar*, 260 Iowa 957, 965–967, 151 N.W.2d 496, 501 (1967).

Fortunately, in this jurisdiction instances of a trial judge presiding despite a personal bias and prejudice disqualification have been so rare we have seldom been called upon to discuss the issue. Cf. *State v. Kimball*, supra; *Pickerell v. Griffith*, 238 Iowa 1151, 29 N.W.2d 588 (1947).

█ In a low-population state with relatively few judges in each judicial district before whom counsel must frequently appear, making an appropriate objection and record relating to prejudicial conduct of the presiding court takes a special brand of courage. Cf. *United States v. Lanham*, 416 F.2d 1140, 1145 (5 Cir. 1969). Appeals which raise such issues will be considered here with that appropriate balance articulated by the United States Supreme Court in *Sacher v. United States*, 343 U.S. 1, 13–14, 72 S.Ct. 451, 457, 96 L.Ed. 717, 726 (1952):

> "But that there may be no misunderstanding, we make clear that this Court, if its aid be needed, will unhesitatingly protect counsel in fearless, vigorous and effective performance of every duty pertaining to the office of the advocate on behalf of any person whatsoever. But it will not equate contempt with courage or insults with independence. It will also protect the processes of orderly trial, which is the supreme object of the lawyer's calling."

In this case trial counsel should have made the appropriate objections and record which were eventually made by a different lawyer on motion for new trial. On the other hand, the record discloses the young trial counsel had been in practice for only two years. It is unlikely anything he learned in law school or from his limited prior courtroom experience would have prepared him to cope with the circumstances confronting him in this trial. We conclude from the transcript the oppressiveness of the trial judge deterred him from making a proper record.

We also conclude by the time he could reasonably have been expected to react and make a proper objection and record, the judge's conduct had irretrievably demolished any chance of a fair trial. See *United States v. Salazar*, 293 F.2d 442, 444 (2 Cir. 1961) ("The prejudicial effect of the remarks once they were made could not have been cured by an instruction to the jury to disregard them even if an objection had been made and the judge had attempted to cure his error.")

For these unique reasons we are persuaded, in this instance, to consider this issue belatedly raised in the new trial motion.

We hold defendant was deprived of his constitutional right to a fair trial. Trial court erred in failing to sustain his motion for new trial.

III. As the case must be retried, we make brief reference to the other two grounds relied on for reversal.

█ While the State failed to specifically show (in the language of the stock instruction) the check in question was signed without authority, it was enough that the accomplice testified she "forged" the signature on the check. Corroboration need not confirm every material fact testified to by an accomplice. *State v. Jochims*, 241 N.W.2d 25, 27 (Iowa 1976).

█ Although trial court erroneously instructed the jurors they could consider the "lack of the evidence in the case" without limiting such lack to the evidence produced

by the State, see *State v. McGranahan*, 206 N.W.2d 88, 92 (Iowa 1973), trial counsel did not object and stated on the record he had no further objections. This waived any further objections on motion for new trial, *State v. Jackson*, 223 N.W.2d 229, 231–232 (Iowa 1974) or on appeal, *State v. Smith*, 215 N.W.2d 225, 227 (Iowa 1974).

Neither of the above issues should arise on retrial.

For the reasons stated in divisions I and II, we reverse and remand for new trial.

REVERSED AND REMANDED.