**STATE of Iowa, Appellee,**

v.

**James Junior BROWNING, Appellant.**

**No. 60637.**

Supreme Court of Iowa.

Aug. 30, 1978.

Cahill, Johnston, Poula & Goetz, by Emmit J. George, Jr., Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Ray W. Sullins, Asst. Atty. Gen. and Eugene J. Kopecky, Linn County Atty., for appellee.

UHLENHOPP, Justice.

This appeal involves two issues which arose in a prosecution on a charge of receiving stolen Sansui speakers in violation of § 712.1, Code 1975.

Defendant stood trial on the charge. In instructing the jury, the trial court gave the usual instructions that defendant James Junior Browning was presumed innocent, that the burden of proof rested on the State to prove him guilty, and that before the jury could find him guilty the State had to prove all of the elements of the crime, enumerating them, by the evidence beyond a reasonable doubt. With reference to the element of defendant's knowledge that the speakers were stolen, the court stated in Instruction No. 13, over defendant's objection:

> If you find from the evidence beyond a reasonable doubt: (1) that the speakers claimed by the State to be stolen were in fact stolen; and (2) that the defendant had possession of said speakers; and (3) that said possession was recent to the time when the speakers were stolen, then that possession of recently stolen property is a circumstance from which you may draw an inference and find, in the light of all of the circumstances shown by the evidence in the case, that the defendant knew the speakers had been stolen.

> The term "recent possession" cannot be precisely defined; it is a relative term and has no fixed meaning. The nature of the property, its ease of transferability, the time when it may have been stolen, and all other facts and circumstances shown by the evidence are to be considered as bearing upon this issue.

> You are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from the possession of recently stolen property.

> If you should find beyond a reasonable doubt from the evidence in this case that the two Sansui speakers belonging to Karl E. Waller were stolen, and that while recently stolen said property was in the possession of the defendant, you would ordinarily be justified in drawing from those facts the inference that the

property was possessed by the accused with knowledge that it was stolen property, unless you find from facts and circumstances in this case that such possession is consistent with innocence.

The inference explained to you in this instruction in no way lessens the burden of proof resting upon the State to prove by evidence beyond a reasonable doubt all of the elements of the offense as set forth in Instruction No. 8.

In defendant's new-trial motion following a verdict of guilty, defendant charged the trial court with improper conduct during closing argument. Defense counsel stated he was unaware of the conduct himself. At the hearing on the motion defendant called two witnesses in support of the charge. Henry Davidson testified:

Q. Would you detail for the Court what you observed? A. I sure will. I observed in the Court Your Honor was taking notes during the time the prosecuting attorney was making his statement, and as soon as the defense attorney started to making statements there a few minutes after, the judge turned, and in the formality which he turned, the direction he turned, put his back to the defense attorney and then he came in what you might say a relaxed position which in turn the jury themselves became relaxed, which actually if you were looking at it, it would influence the jury. It would influence the jury because if I was a juror. . . .

Q. At the end of defense counsel's argument was there any change in the judge's posture? A. Yes, it was, he turned.

Q. What was the change? A. He turned back around and faced the front in his seat.

Q. Was that during the rebuttal argument of the prosecutor? A. It was.

Cleo Luter testified:

Q. What did you observe? A. Well, when the County Attorney got up and you guys was arguing, you know, he talked and then you talked, and when you got up the judge, he turned all the way around and crossed his legs and turned around and looked toward the west, and when you got through then the County Attorney got back up, then he turned back around.

In the course of its order overruling the new-trial motion the trial court stated:

I have no recollection of any impertinent conduct or any improper conduct by the Court during this trial, and Mr. George himself acknowledged that he did not observe anything. If anything had been done by the Court that would be such a nature to cause the defendant not to get a fair trial, I am sure that Mr. George in his representation of the defendant would immediately have called the attention of the Court to that fact. The configuration of the Courtroom is not such that Mr. George's back was to the Court at all times during his comments.

It was said that I appeared to have been taking notes. I want the record to show, and this is a professional statement too, Mr. George, of the Court that I have here all of the notes taken by the Court during the trial and there is not one note that was taken by the Court during the final arguments of counsel, and the reason was because the final arguments were reported. I take notes if the arguments are not reported so that I can pass upon any issue that might arise in the course of argument if objections are made by opposing counsel, but when arguments are reported I do not take notes. I swivel around in my chair all during that trial or all during any trial that I preside over. I don't believe there is a judge who doesn't swivel around in his chair during the conduct of a trial. I swiveled around in this chair this afternoon and I will continue to swivel around in a swivel chair while I am conducting trial at any and all times in this or any other Court, and I consider it impertinent to accuse me of being unfair or prejudiced in the conduct of a trial simply because I might cross my legs or swivel in a chair during that trial, and personally I

want you to know, sir, that I resent that, but that is directed as a personal matter to you, Mr. George, and not to your client, and I think that I have been considerate of this defendant as well as I have been considerate of all defendants who have appeared in my Court in the past eight years on a criminal charge.

■ I. Defendant first contends that the trial court's permissible-inference language in Instruction 13 shifted the burden of proof to him and required him to establish his innocence, contrary to *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, and *State v. Monroe*, 236 N.W.2d 24 (Iowa).

We have here two separate concepts: placing the burden of proof on a party, and informing a jury that a specified kind of evidence permits an inference to be drawn. *Mullaney* and *Monroe* are of the former kind. In *Mullaney* a Maine statute placed the burden on the defendant to prove only manslaughter was committed, once the State proved murder. *Monroe* involved a statute which placed the burden on the defendant to prove accommodation, once the State proved delivery of a controlled substance. Present Instruction 13 stated that the inference in no way lessened the burden of proof resting on the State to prove the elements set forth in Instruction 8, and one of those elements in Instruction 8 was knowledge that the goods were stolen.

Here we have a case of the second kind—informing the jury that specified evidence permits a certain inference. This is different from the *Mullaney* proscription. The present inference has historically been permissible. *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380; *State v. Barr*, 259 N.W.2d 841 (Iowa); *State v. Lewis*, 242 N.W.2d 711 (Iowa); *State v. Rosewall*, 239 N.W.2d 171 (Iowa); *State v. Morrison*, 183 N.W.2d 696 (Iowa); *State v. Brightman*, 252 Iowa 1278, 110 N.W.2d 315; *State v. Girdler*, 251 Iowa 868, 102 N.W.2d 877; *State v. Hessians*, 50 Iowa 135. See also *Yee Hem v. United States*, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; *United States v. Brotherton*, 427 F.2d 1286 (8 Cir.); *Sewell v. United States*, 406 F.2d 1289 (8 Cir.); *Aron v. United States*, 382 F.2d 965 (8 Cir.).

In the *Barnes* case the United States Supreme Court considered the issue of whether the historically permissible inference of guilty knowledge from recent possession comports with due process. The Court stated (412 U.S. at pages 844–846, 93 S.Ct. at 2362–2363, 37 L.Ed.2d at 387):

This impressive historical basis, however, is not in itself sufficient to establish the instruction's constitutionality. Common-law inferences, like their statutory counterparts, must satisfy due process standards in light of present-day experience. In the present case the challenged instruction only permitted the inference of guilt from *unexplained* possession of recently stolen property. The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. On the basis of this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen. Cf. *Turner v. United States*, 396 U.S. [398], at 417, 90 S.Ct. [642], at 652, 24 L.Ed.2d 610 [, 624]; *Leary v. United States*, 395 U.S. [6], at 46, 89 S.Ct. [1532], at 1553, 23 L.Ed.2d 57 [, 87]. Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process.

The present evidence shows that several months before the incident in question defendant spoke with one Frazier about buying some speakers. On the evening of January 10, 1977, someone broke into the home of one Waller and stole two Sansui speakers. That same evening defendant brought

two speakers—positively identified by markings to be Waller's speakers—to Frazier's apartment and sold them to him for $100. The jury could reasonably find that no plausible explanation was made for defendant's possession consistent with innocence. This record clearly satisfies the Barnes' test of due process. The State was not required in addition to negate that defendant himself was the thief. *State v. Houston*, 211 N.W.2d 598 (Iowa).

We do not find merit in defendant's first contention.

■ II. Defendant's second contention raises a question of fact as to whether the trial court denigrated defense counsel's argument in the eyes of the jury and thereby damaged the defense. We are very sensitive to words or acts of trial judges which communicate to the jury the judge's views about the prosecution or the defense, or about a witness or a party, in a criminal or civil lawsuit. Juries are aware of the judge's conduct. They tend to look upon him as the central impartial arbiter in the trial, and a judge can use perfectly proper words but use them in such way, or in other ways comport himself, so as to demonstrate to the jury his feeling about a claim or a defense or a person. *State v. Larmond*, 244 N.W.2d 233, 236 (Iowa) ("a trial court may not telegraph to a jury, by purposeful exclamations, gestures or facial expressions, his approval or disapproval, belief or disbelief, in the testimony of witnesses or arguments of counsel"). See also *Wilson v. Ceretti*, 210 N.W.2d 643 (Iowa).

The other side of the coin is that a trial judge is an easy mark for anyone who wishes to claim prejudicial conduct. Week after week the judge sits on the bench listening to witnesses and counsel. He is after all a human being, not an automaton. He sometimes must scratch his head or shift from an uncomfortable position, or he may jot down notes about the pending case or another one or unconsciously turn his chair suddenly when struck by a novel contention or a difficult objection.

After study of the present record we believe this trial judge's vehement denial of improper conduct reflects the fact. We think counsel's unawareness of demeaning conduct by the judge would be strange, had such conduct occurred. Likewise, defendant himself should have been aware of such conduct had it occurred, yet he did not testify to it nor did any juror.

We do not cast aspersion upon defense counsel for presenting this issue in district court and here. He was in possession of the Davidson-Luter testimony and had a responsibility to defendant to present it. We simply hold on the record that the misconduct claimed is not established. That the trial judge was the target of the Davidson-Luter testimony is merely an occupational hazard. The case demonstrates again the necessity for care by judges lest their conduct be misinterpreted. They function in a glass house.

We do not find merit in defendant's second contention. Opinions expressing our views on this subject include *State v. Larmond*, supra, 244 N.W.2d 233 (Iowa); *State v. Glanton*, 231 N.W.2d 31 (Iowa); *State v. Thornburgh*, 220 N.W.2d 579 (Iowa); *State v. O'Kelly*, 211 N.W.2d 589, cert. den. 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240, reh. den. 419 U.S. 887, 95 S.Ct. 160, 42 L.Ed.2d 131; *State v. Grady*, 183 N.W.2d 707 (Iowa); and *State v. Kimball*, 176 N.W.2d 864 (Iowa).

We thus uphold the judgment and sentence.

AFFIRMED.

All Justices concur except ALLBEE and McGIVERIN, JJ., who take no part.