STATE of Iowa, Appellee,

v.

George Edward WINDSOR, Appellant.

No. 66052.

Supreme Court of Iowa.

March 17, 1982.

Douglas F. Staskal, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and David L. Gill, Asst. Woodbury County Atty., for appellee.

Considered by REYNOLDSON, C. J., Le-GRAND, UHLENHOPP, McCORMICK and McGIVERIN, JJ.

McCORMICK, Justice.

Defendant George Edward Windsor appeals from his conviction by jury and sentence for sexual abuse in the third degree in violation of section 709.4(1), The Code. He contends that the trial court abused its discretion in limiting his voir dire of prospective jurors, that the court was biased, that the court erred in several evidentiary rulings, and that the cumulative errors denied him a fair trial. We affirm the trial court.

The State charged defendant as the result of an incident that occurred in the late evening of January 12, 1980. The alleged victim is a young woman who spent the earlier part of the evening with her boyfriend and other friends in a Sioux City tavern. After becoming upset with her boyfriend, she left the tavern alone to walk home. While on the way, a man in a car offered her a ride but she refused and continued walking. A few minutes later the man who earlier had offered her a ride grabbed her from behind, dragged her to an area between two residences, and sexually assaulted her. When the attack ended, she ran to a friend's home, called her boyfriend and later the police.

The victim described her assailant and his automobile for the police. She was also examined by a physician. Defendant owned an automobile that she subsequently identified as like the one driven by the man who attacked her. When the police showed her a photographic array including defendant's picture, she identified defendant as the attacker. In a search of defendant's home, the police found a jacket matching the victim's description of the man's attire at the time of the assault. Defendant was arrested and charged. At trial he denied the offense and asserted a defense of alibi. He was convicted and now appeals.

I. *The voir dire issue.* Defendant contends the trial court erred in restricting voir dire and in interjecting comments during his counsel's interrogation of potential jurors. Defendant sought expansive voir dire through several motions, all of which were overruled. The court conducted part of the voir dire by asking the panel several general questions concerning their willingness to follow the law, their knowledge of the case, and their acquaintanceship with the witnesses and attorneys. Counsel were then

permitted to question the jurors on subjects not covered by the court. On several occasions, the court interrupted defense counsel to stop his inquiry on particular subjects.

▮▮ The manner of conducting voir dire and its scope are not specifically addressed by rules of procedure in Iowa. This court has said, however, that the purpose in allowing latitude in counsel's inquiry is to provide information to assist counsel in deciding how to exercise challenges. Control of the process is lodged in the discretion of the trial court, and this court will not reverse unless that discretion manifestly has been abused. *State v. Elmore*, 201 N.W.2d 443, 446–47 (Iowa 1972).

Defendant does not complain about a trial court conducting voir dire. He does complain that the court's voir dire was inadequate and that it was an abuse of discretion for the court to deny counsel the right to question the panel more thoroughly. The main subject on which he desired more specific and detailed interrogation was the possibility of racial prejudice based on the fact he is black and the alleged victim is white.

On this subject the judge instructed the panel on principles of equal justice, specifically noting the racial difference and declaring that racial issues "have no part in any criminal trial." He asked whether any member of the panel could not "live with that concept of our law" and no one responded. Defendant characterizes the question as a "challenge" to the jurors to reveal any prejudice and argues any juror who spoke up "would surely have felt he was revealing himself as at least un-American, if not criminal." The voir dire record discloses defense counsel made brief inquiry of individual jurors about racial prejudice, with negative response. Counsel, however, sought to use more subtle and detailed questions to bring possible prejudice to the surface. For example, he started to ask a juror to identify the best book he had read recently. The court interrupted the question to call counsel's attention to the time, and the issue was not pursued.

▮▮ In the circumstances of this case, we do not find an abuse of discretion in the court's handling of the inquiry concerning racial prejudice. Based on the racial difference and the nature of the alleged offense, it is reasonable to believe a possibility of racial prejudice against defendant existed. The court obviously recognized this possibility in specifically inquiring about racial prejudice. The present dispute concerns the style and sufficiency of the interrogation. In resolving this dispute, we believe it is important that no special circumstances were shown to suggest the possibility of prejudice other than the difference in race between the defendant and victim and the nature of the alleged offense.

The significance of special circumstances is exemplified in two decisions of the United States Supreme Court in which defendants asserted a due process right to specific inquiry concerning racial prejudice during voir dire. In *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), the right was upheld. In *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976), it was not. In *Ham* the defendant was a civil rights activist who alleged that local authorities had framed him on a drug charge because of his civil rights work. Thus, racial prejudice was a material issue affecting the merits of the case:

> His prominence in the community as a civil rights activist, if not already known to veniremen, inevitably would have been revealed to the members of the jury in the course of his presentation of that defense. Racial issues therefore were inextricably bound up with the conduct of the trial. Further, Ham's reputation as a civil rights activist and the defense he interposed were likely to intensify any prejudice that individual members of the jury might harbor.

*Ristaino*, 424 U.S. at 596–97, 96 S.Ct. at 1021, 47 L.Ed.2d at 264. In contrast, *Ristaino* involved the conviction of blacks for armed robbery and assault offenses against a white security guard. The Supreme Court held that the mere fact of different racial identity did not give rise to a constitutional right to specific inquiry about ra-

cial prejudice. *Id.* 424 U.S. at 598, 96 S.Ct. at 1022, 47 L.Ed.2d at 265.

In a subsequent case, the Court distinguished the constitutional issue involved in *Ham* and *Ristaino* and imposed a supervisory rule on federal trial courts requiring specific inquiry into racial prejudice on voir dire when requested by a defendant accused of violent crime against a person of a different race. *Rosales-Lopez v. United States*, 451 U.S. -182, 192, 101 S.Ct. 1629, 1636, 68 L.Ed.2d 22, 31 (1981) (plurality opinion). We now hold that trial courts in Iowa should make or permit counsel to make specific inquiry into racial prejudice upon proper request in similar circumstances and in any case in which a reasonable possibility exists that the verdict might be affected by racial prejudice. We also hold, however, that, absent special circumstances of the nature delineated in *Ham*, the inquiry may be limited to a question of the panel sufficient to call the jurors' attention to the subject and require response from any juror harboring racial bias. Under this standard, we find no abuse of discretion in the present case. Of course, we do not intimate that the court would have been wrong in permitting more detailed inquiry.

The standard we adopt conforms with holdings of other courts in similar circumstances. *See, e.g., United States v. Johnson*, 527 F.2d 1104 (4th Cir. 1975); *United States v. Grant*, 494 F.2d 120 (2d Cir.), *cert. denied*, 419 U.S. 849, 95 S.Ct. 87, 42 L.Ed.2d 79 (1974); *Featherston v. United States*, 491 F.2d 96 (5th Cir.) (per curiam), *cert. denied*, 417 U.S. 971, 94 S.Ct. 3176, 41 L.Ed.2d 1142 (1974); *Commonwealth v. Cofield*, 1 Mass.App. 660, 305 N.E.2d 858 (1974).

The other restrictions by the court on voir dire, including the court's interruptions of counsel, do not establish an abuse of discretion either. The objective of voir dire is to gather sufficient information for the exercise of challenges. The underlying purpose is to secure a fair and impartial jury. Voir dire is not designed for educating jurors on the law or for persuading them on the merits of the case. The restraints imposed by the court in this case precluded counsel from soliciting jurors' views of the law. The court believed it was sufficient if the jurors recognized their obligation to accept and follow the court's instructions. When the jurors acknowledged that obligation, the court cut off further inquiry into legal issues. While we do not endorse the court's methods, we find no abuse of discretion in its rulings.

II. *The bias issue.* Defendant contends that the court's remarks and rulings during voir dire and at trial created an impression of bias in favor of the State. He acknowledges he did not preserve error on this issue but alleges he should be excused from doing so.

This court discussed the error preservation issue in *State v. Larmond*, 244 N.W.2d 233, 237 (Iowa 1976). Ordinarily error is not preserved unless a timely objection is made. In *Larmond* the claim of bias was made for the first time in defendant's motion for new trial. This court found that the oppressiveness of the trial judge deterred the inexperienced defense attorney from making a proper record and that the judge's conduct had irretrievably demolished the defendant's chance for a fair trial before defense counsel could have been expected to object. In these circumstances, the court held that the belated raising of the issue in the new trial motion was sufficient to preserve error. *Id.* The issue was not raised at any time in the trial court in the present case, and no circumstances like those in *Larmond* existed. No excuse for failing to make a proper record at trial has been established.

At least two reasons exist for requiring a timely objection to alleged judicial bias. One is that it gives the judge an opportunity to correct or explain his conduct before the defendant has been denied a fair trial. *See State v. Smith*, 242 N.W.2d 320, 323–24 (Iowa 1976). Another reason is that it precludes a defendant from delaying an objection in order to gamble on a favorable verdict.

In the circumstances of this case, defendant's failure to raise the issue in the trial court bars our consideration of the issue. We do not intimate any view on the merits of his contention.

III. *The evidence issues.* Defendant alleges the trial court erred in six evidentiary rulings. We have examined each objection and ruling. All of them involve the issue of relevancy. The determination of relevancy rests in the discretion of the trial court. *State v. Zaehringer*, 280 N.W.2d 416, 419–20 (Iowa 1979). When evidence is admissible only for a limited purpose, it is the duty of the proponent to alert the trial court to his theory of admissibility. *See Lemke v. Mueller*, 166 N.W.2d 860, 871 (Iowa 1969). Moreover, even when evidence has some probative value, the trial court has discretion to exclude it if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, waste of time, or needless presentation of cumulative evidence. *Kalianov v. Darland*, 252 N.W.2d 732, 735 (Iowa 1977).

Finally, even when the ruling is erroneous, reversal is not required when no prejudice results. One respect in which the presumption of prejudice may be overcome is by showing the same evidence came into the record at another time. In addition, prejudice will not be presumed or found when the answer to the question was not obvious and the proponent made no offer of proof. *Matter of Estate of Herm*, 284 N.W.2d 191, 197 (Iowa 1979).

In the present case, each evidentiary complaint of defendant fails under one or more of these rules. Thus we find no merit in his allegations concerning the trial court's evidentiary rulings.

He makes an additional contention that the rulings denied him his due process right to present a defense under the principle delineated in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). He did not urge this contention in the trial court and cannot raise it for the first time here.

IV. *Cumulative error.* Because we find no merit in the other issues presented by defendant, we find no basis for reversal on the ground of cumulative error.

AFFIRMED.