STATE of Iowa, Appellee,

v.

Justin Howard VOELKERS, Appellant.

No. 94–1096.

Court of Appeals of Iowa.

Feb. 28, 1996.

Jack E. Dusthimer, Davenport, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, William E. Davis, County Attorney, and Michael Walton and Realff Ottesen, Assistant County Attorneys, for appellee.

Heard by HAYDEN, P.J., and HABHAB and CADY, JJ.

CADY, Judge.

Justin Voelkers appeals his convictions and sentences for first-degree murder, first-degree robbery, first-degree kidnapping, criminal gang participation, conspiracy to commit robbery, and possession of an offensive weapon. Upon our review, we affirm.

Michelle Jensen, a seventeen year-old high school student, lost her life in the early morning hours of August 29, 1993. She died from a single shotgun blast to her head. Later that morning, police picked up Justin Voelkers, along with Tony Hoeck, Jason Means, Shawn Shewmake, Christopher Felgenhauer, and Joe Hager for questioning about her death.

At the police station, officers read Voelkers his *Miranda* warnings. Voelkers then gave a statement to the police. Official informed him he was free to leave, but he voluntarily choose to remain at the station. Voelkers later that morning became a suspect in Jensen's death and officer Brown conducted a second interview.

The State charged all six men with first-degree robbery, first-degree kidnaping, criminal gang participation, and conspiracy to commit robbery. Voelkers, Means, Hoeck, Shewmake, and Felgenhauer were also charged with first-degree murder. The State further charged Voelkers, Means, and Hoeck with possession of an offensive weapon, specifically a short-barreled shotgun. Hager, Shewmake, and Felgenhauer pleaded guilty to lesser charges and agreed to testify as prosecution witnesses.

Voelkers moved to suppress his statements to police alleging they were involuntary and obtained in violation of his constitutional rights. The district court denied his motion to suppress.

The three remaining codefendants sought a change of venue due to extensive pretrial publicity. Counsel for Means attempted to introduce the results of a survey conducted by Per Mar Security, yet the district court disallowed it for improper foundation. Numerous videotapes, transcripts, and newspaper articles were introduced into evidence. The district court denied the motion for a change of venue.

The district court conducted voir dire in two phases. First, each potential juror was individually questioned about his or her awareness of the media coverage and his or her ability to be impartial. On several occasions, the district court judge made comments concerning the questioning tactics employed by defense counsel in the presence of the individual juror being questioned. Counsel for Means requested the judge refrain from such comments in front of prospective jurors due to a possible reflection of a negative attitude toward the defendants. During the second day of voir dire, a local newspaper ran a substantial number of articles about the trial which included Voelkers and Hoeck's prior criminal records. Voelkers renewed his motion for a change of venue, which the district court denied.

At trial, evidence presented linked Voelkers and his codefendants to the Conservative Vice Lords gang, indicated the men intended to rob a convenience store but needed Jensen's vehicle, and implied plans were made to get her car at a party held at Hoeck's residence on August 28, 1993. Witnesses testified Jensen became quite intoxicated at the party, yet resisted when Voelkers and the others attempted to take her car keys. Hoeck then told Means to get a sawed-off shotgun which he called "Bud", and later told Voelkers and Means to "take care of business" while handing the gun to the two men. Evidence showed Voelkers and Means then left with Jensen in her car stating they were "going to take her home." Shewmake, however, testified Hoeck privately told him they were going to kill Jensen. Shirley VanSant testified she heard a male voice outside here rural home, a girl sobbing, a sound similar to a shot, and a car being driven away in the early morning hours of August 29, 1993. She also stated she observed the vehicle as it drove away and it resembled Jensen's car. Evidence indicated Voelkers and Means returned to tell the others Voelkers shot Jensen, they now had her car, and were able to continue with plans to rob the convenience store. The robbery did not go through, according to Hager, since the store was "too busy." Means and Voelkers' videotaped police interviews were also admitted over Voelkers' objections.

After the presentation of all the evidence, the district court judge became ill. A substitute judge presided during jury instructions and deliberations. The original judge had previously submitted to counsel a set of proposed jury instructions including felony murder instructions pertaining to all three defendants, and premeditated murder instructions for Voelkers only. The substituted judge overruled Voelkers' objection to the differing standards used in the instructions.

The jury found Voelkers guilty as charged. The district court sentenced him to life imprisonment with no possibility of parol and an additional forty-five years.

Voelkers appeals contending the district court erred in not granting the motion for a change of venue and in participating in judi-cial misconduct in violation of his right to a fair trial. He also argues the district court erred in failing to declare a mistrial after the sudden illness of the original trial judge, using jury instructions with a different standard of law for Voelkers, failing to suppress his statements to police, and failing to grant his motion for a new trial. He further seeks preservation of ineffective assistance of counsel claims for postconviction relief.

## I. Change of Venue

■ Our unique scope of review for a district court's denial of a motion for a change of venue due to trial publicity requires us to examine the record de novo to determine whether the district court's decision demonstrates an abuse of discretion. *State v. Siemer*, 454 N.W.2d 857, 860 (Iowa 1990); *State v. Love*, 302 N.W.2d 115, 122 (Iowa 1981).

■ Pretrial publicity warrants a change of venue when "such a degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R.Crim.P. 10(10)(b). Prejudice can be shown by publicity attending the trial which is so pervasive and inflammatory prejudice must be presumed or actual prejudice on the part of the jury exists. *State v. Simmons*, 454 N.W.2d 866, 867 (Iowa 1990).

■ A juror need not be completely ignorant of the issues and events involved in a trial. *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594–95 (1975); *State v. Gavin*, 360 N.W.2d 817, 819 (Iowa 1985). Mere exposure to news accounts does not amount to a substantial likelihood for prejudice. *State v. Walters*, 426 N.W.2d 136, 138 (Iowa 1985). News reports containing information concerning prior convictions of defendants do not, by themselves, create presumptive prejudice. *Simmons*, 454 N.W.2d at 868. We look not merely to what the jurors have been exposed to, but whether the juror holds such a fixed opinion of the merits of the case he or she cannot impartially judge the guilt or innocence of

the defendant. *Gavin,* 360 N.W.2d at 819 (Iowa 1985).

■ In order to determine whether news articles and broadcasts have prejudiced a community for venue purposes, we consider whether the accounts: indicated the defendant is guilty, were factual and informative, were inflammatory in tone, contained editorial denunciations of the defendant, contained emotional stories regarding the defendant or the victim, or were inaccurate, misleading or unfair. *Walters,* 426 N.W.2d at 139.

■ We also look to see whether enough time had passed between the accounts and the trial date to have dissipated any prejudicial effect of adverse publicity, whether panel members who professed knowledge of the case stated they could render an impartial verdict on the basis of the evidence presented at trial, and whether the trial judge sustained strikes for cause against jurors who stated they could not render an impartial verdict due to their prior knowledge. *Walters,* 426 N.W.2d at 139. *See also Siemer,* 454 N.W.2d at 860 (nature, tone, accuracy of articles, their timing in relation to the trial, and the impact of the publicity on the jurors as revealed through voir dire used to determine if publicity is presumptively prejudicial).

■ Here, the coverage was factual, informative, accurate, not inflammatory, and not misleading. Media sources covered the funeral of Jensen, and showed blood at the scene of the crime, which would tend to evoke emotional appeal towards the victim. The funeral stories, as well as a majority of the coverage, occurred several weeks prior to the trial. However, the Quad City Times ran an article summarizing the events the day before voir dire and ran a second article after the first day of jury selection.[1]

The voir dire in the case revealed a great deal of exposure to the news coverage surrounding the trial. However, no one impanelled on Voelkers' jury had read the second article in the Quad City Times or had heard of the allegations of sexual abuse. The jurors stated they would be impartial, could lay aside prejudgments, and could decide the case on the evidence presented to them at trial.

■ Voelkers also contends the district court set its own standard for determining strikes for cause and made statements during voir dire which would influence the jurors against the defendants.

Here the answers to the voir dire questions indicated difficulties individual jurors would have in being impartial while deciding this case. While a trial court could have dismissed these jurors for cause, each juror eventually stated they would be impartial and would base their decisions on the evidence presented at trial. *See generally* Iowa R.Crim.P. 17(5)(k). The district court also noted the statements from the potential jurors provided "good information for ... when it comes time to exercise strikes."[2] Moreover, even if the district court committed error in not striking these jurors for cause, the statements in front of the jurors who actually sat on Voelkers' jury did not reflect a bias against the defense.

We find the jury selected in this case to be fair and impartial. *See State v. Simmons,* 454 N.W.2d at 868 (intensive voir dire effective in routing out any juror prejudice). The trial court did not abuse its discretion in denying Voelkers' motion for a change of venue due to pretrial publicity.

1. Both articles alluded to sexual abuse charges against Voelkers and his codefendants which the State had dismissed prior to trial. The second article also listed Voelkers and Hoeck's criminal records.

2. The district court on several occasions during individual voir dire stated he had to "rehabilitate" the witnesses. On one occasion, while addressing a State objection, the district court judge stated "Overruled, we'll have to rehabilitate her anyway." Later, after the first day of voir dire, the judge admonished the potential jurors to avoid media coverage of the case and stated "Don't let them drive us out of this community. You should have some pride in having this case tried in the community where the alleged offense occurred ... avoid that [observing media stories about the case, discussing the case with others] at all costs of having yourself disqualified from this trial." A careful reading of the voir dire proceedings indicate the "them" refers not defense counsels or the State, but persons involved in the media.

## II. Judicial Misconduct

 Basic due process requires a fair trial in a fair tribunal. *State v. Larmond,* 244 N.W.2d 233, 235 (Iowa 1976). We recognize "[t]he law imposes a substantial burden on one who seeks to prove the trial judge is not impartial." *State v. Bear,* 452 N.W.2d 430, 434 (Iowa 1990). It is imperative the court not become an advocate of any party's cause. *State v. Cuevas,* 288 N.W.2d 525, 531 (Iowa 1980).

 A presiding judge over a criminal case should not only be fair and impartial, he or she should conduct themselves to constantly manifest those qualities. *Larmond,* 244 N.W.2d at 235. The judge must avoid conduct which may infer bias against either party. *Id.* at 236.

 While Voelkers contends he could not find any specific requirement to preserve error on this issue for review, the proper procedure to preserve error for a claim of judicial misconduct is to make a record in chambers of the offending conduct coupled with an objection. *Larmond,* 244 N.W.2d at 237 (claim, however, for judicial misconduct allowed due to the lack of experience of the trial counsel and the extreme deterrent effect of the trial court's oppressive nature and conduct, including gestures, facial expressions, and purposeful exclamations, during questioning of key witnesses).

 Voelkers' counsel entered into a blanket agreement to join codefendant's motions before the court, including oral motions. Counsel for Means objected to the manner in which the judge commented on her voir dire questioning and questioning by counsel for Voelkers. While the request was not specifically in the form of a motion and no request to make a specific record of the judicial misconduct was made, we find this to be sufficient preservation of error for Voelkers' claim of judicial misconduct.

 However, we do not find the district judge's conduct prejudiced Voelkers' constitutional right to a fair trial. *See State v. Manning,* 224 N.W.2d 232, 237 (Iowa 1974). The judge intervened into the voir dire process during the individual questioning por-tion. A district court judge possessed some discretion to question jurors during voir dire. *See generally, State v. Barrett,* 445 N.W.2d 749, 753 (Iowa 1989). His questioning tactics appeared to reflect his desires to avoid an overabundance of strikes for cause in order to prevent a change of venue.

We cannot condone all of the district court's comments during the voir dire process. However, the conduct complained of was restricted to the jury selection process, with the majority of the comments made either outside the presence of the jury or during individual voir dire in front of potential jurors who never sat on Voelkers' trial. The statements also did not necessarily reflect hostility toward the defense and a bias in favor of the State. Rather, the statements reflected a desire to avoid a change of venue from the county in which the charges were filed. Moreover, the court specifically instructed the jury not to view anything the judge had stated or done during the trial "to be an opinion as to the facts, proof, or what their verdict should be." *See* Jury Instruction 87. As such, we cannot say Voelkers was denied a fair trial with an fair tribunal.

We find Voelkers has not met his substantial burden to prove the judge possessed a bias against the Voelkers which resulted in prejudice. We reject his claim of judicial misconduct.

## III. Mistrial

We review a district court's denial of a request for a mistrial for errors of law and look to see if the district court's decision to deny Voelkers' request for a mistrial or continuance constituted an abuse of discretion. Iowa R.App.P. 4; *See State v. Misner,* 410 N.W.2d 216, 219 (Iowa 1987).

 Rule 18(7)(b)(1) of the Iowa Rules of Criminal Procedure provides in part:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying to the court he or she has familiarized himself or herself with the record

of the trial, may proceed with and finish the trial.

Iowa R.Crim.P. 18(7)(b)(1). A mistrial or continuance should be granted only if it is reasonably shown the substitution will substantially prejudice a defendant's right to a fair trial. *Misner,* 410 N.W.2d at 218. The substituted judge possesses discretion to rule on motions for a mistrial or continuance. *Id.*

■ Here, the substituted judge did not make any particularized oral or written certification on the record he had sufficiently familiarized himself with the case. However, he clearly made great efforts to go over the transcripts of the proceedings, the exhibits introduced, and the proposed jury instructions left by the original judge, especially with regards to particular objections raised by the defense. We find the substituted judge complied with Rule 18(7)(b)(1) and possessed the ability to see the trial through to its conclusion.

Moreover, the instructions given were the product of the original district court with minimal modification by the substituted judge.[3] Voelkers asserts the original judge was needed to preside over the jury instructions conference and closing arguments, yet never specified how he was prejudiced by the substituted judge's actions. We find no prejudice suffered by Voelkers in allowing the substituted judge from presiding over jury instructions, closing arguments, and jury deliberations.

■ Voelkers also contends the substituted judge did not possess sufficient knowledge to rule upon his objection during the jury instruction conference concerning the premeditation instruction. However, counsel for Voelkers never asserted in the conference the factual evidence presented at trial did not raise a material issue of premeditated murder for Voelkers. Instead, his objection was legal in nature. As such, the substituted judge possessed the requisite ability to rule upon the objection, as it did not deal with the factual evidence presented at the portion of the trial over which he did not preside.

The substituted judge's denial of the continuance until the original judge returned and denial of the mistrial did not constitute an abuse of discretion.

## IV. Jury Instruction

■ We review a district court's use of jury instructions for errors of law. Iowa R.App.P. 4. The court ordinarily is required to instruct the jury on all material issues raised by the evidence. *State v. Broughton,* 425 N.W.2d 48, 51 (Iowa 1988). The district court must "avoid arguing the case for either side in the instructions." *State v. Marsh,* 392 N.W.2d 132, 133 (Iowa 1986) (quoting *State v. Fagan,* 190 N.W.2d 800, 802 (Iowa 1971)).

■ Voelkers concedes material issues were raised by the evidence to permit the court to instruct on premeditated murder for him. He claims, however, the district court committed reversible error in giving undue prominence to Voelkers with the single premeditation instruction directed towards him and not his other codefendants. He argues the district court should either not have given his premeditation instruction or should have given a similar instruction for the other two codefendants.

We find the district court's premeditation instruction given for Voelkers to be supported by the evidence presented at trial. While the evidence also may have supported a premeditation instruction for Means and Hoeck, we find no prejudice suffered by Voelkers as a result of the court's failure to instruct. Ample evidence supported Voelkers' conviction for first-degree premeditated murder. The failure to give a premeditated murder instruction for Means and Hoeck did not "argue the case" for the State. We cannot find the jury would not have convicted Voelkers of first-degree murder had an instruction been given to the other two defendants.

## V. Motion to Suppress

■ When a defendant alleges error involving a constitutional right, such as here,

---

3. The only modification from the proposed instructions left by the original judge consisted of a change in Instruction 87. The substituted judge amended the instruction to provide in part

"nothing I, meaning Judge John Nahra or James R. Havercamp, have said or done during the trial . . ."

we make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries*, 417 N.W.2d 237, 239 (Iowa App.1987).

The State bears the burden of showing the statements made by Means were voluntary and his will was not overborne by officers. *State v. Rhomberg*, 516 N.W.2d 803, 806 (Iowa 1994). We look to several factors to ascertain the voluntariness of a statement, including: knowledge of *Miranda* rights, age, experience, level of education, intelligence, the length of time questioned, physical punishment, physical and emotional condition, deceit or improper promises, mental weaknesses, and the ability to understand constitutional rights and consequences of waiving these rights. *State v. Reid*, 394 N.W.2d 399, 402 (Iowa 1986). *See also State v. Munro*, 295 N.W.2d 437, 440 (Iowa 1980) (test for determining the admissibility of confessions or inculpatory statements is voluntariness).

Here, officials read Voelkers his *Miranda* rights. While officials did not repeat his *Miranda* rights when he was questioned for the second time, at the beginning of the second interrogation, he was reminded officials had previously read him his rights which he acknowledged. *See State v. Cooper*, 217 N.W.2d 589, 597 (Iowa 1974) (one administration of *Miranda* warnings sufficient for subsequent interrogation if the not too remote in time). The entire amount of time Voelkers had been questioned, including the period of time he waited at station after he had been told he was free to go, consisted of approximately four to five hours. Deputy Brown did not prevent him from smoking. Voelkers was not denied the opportunity to meet with his mother during questioning, as Brown permitted a break in the questioning when she arrived and encouraged Voelkers to discuss the situation with her. Voelkers indicated he possessed eleven years of schooling and appeared to understand the consequences of his waiver and the questioning by officials.

Voelkers contends his lack of sleep and hunger prevented him from voluntarily waiving his rights for the presence of counsel, rendering his confession inadmissible. We note, however, officials picked up Voelkers at 7:00 a.m. and did not begin questioning him until 8:00 a.m. All of the questioning took place during normal business hours. Voelkers did yawn and stated he was tired, however, he never requested the interrogation to stop due to his lack of sleep, nor did Brown tell him he would be able to sleep only after the interview. Moreover, Voelkers answered questions given to him with immediate responses, showing no hesitance to provide information. He appeared lively and did not indicate the lack of sleep was affecting his abilities to understand or answer the questions presented to him. We find this to be insufficient to show the waiver was involuntarily given.

Officer Brown, who interviewed Voelkers, did state at the beginning of the interview he would try to speed up the questioning and "if you can help me by speeding it up, just tell me factually, real quick about what happened then we can get through it quicker and you can get to your lunch." However, this was Voelkers' second interview. Immediately after Brown's statement Voelkers was reminded of his *Miranda* rights. We do not find these actions to be coercive enough to invalidate Voelkers' waiver. Voelkers apparently did not eat breakfast, was provided lunch by officials, and was allowed to eat after the completion of the interrogation. He also indicated had eaten in the early morning hours of the previous night when the group had gone to Hardee's after the shooting. He did not request to stop the interrogation in order to eat at any point during the questioning. The evidence does not indicate officers deprived Voelkers of food for a significant period of time in order to elicit a waiver or statements from Voelkers.

No evidence indicates Voelkers' will was overborne by officers. We find the waiver of rights signed by Voelkers to be voluntarily given and his statements admissible. We find no error in the district court's denial of his motion to suppress.

## VI. Motion for a New Trial

Generally the decision to grant a new trial rests within the sound discretion of

the district court. *State v. Lindsey,* 302 N.W.2d 98, 101 (Iowa 1981). The district court is afforded discretion because it is in as good or better position to make a determination in accordance with the demands of justice. *Id.* However, when the sole determining factor involved in the decision to grant a new trial involves a rule of law, this rationale is inapplicable. *Id.*

Voelkers relies upon the cumulative effect doctrine to show the district court's abuse of discretion. *State v. Hardy,* 492 N.W.2d 230, 233 (Iowa App.1992). *See also State v. Burkett,* 357 N.W.2d 632, 638 (Iowa 1984). In *Hardy,* we found the cumulative effect of the introduction of certain evidence to the jury prejudiced the defendant and warranted a new trial. *Id.* However, in *Hardy,* all of the items of evidence possessed minuscule probative value with extreme prejudicial effect. *Id.* The court also noted the district court judge's hostility toward the defendant evidenced his bias and the broad discretion normally afforded a district court would be misplaced. *Id.* at 234. We find the cumulative effect doctrine to be inapplicable to the present case.

Voelkers contends the cumulative effect of all his contentions alleged previously require this court to grant him a new trial. We, however, find the denial of his motion for a change of venue to be proper in light of the fair and impartial jury impanelled, the district court judge's comments did not have a prejudicial effect on Voelkers' trial, the substituted judge possessed the requisite abilities to see the case to its completion, the instruction given to the jury were based on material issues which came forth from the evidence, and no error in the denial of Voelkers motion to suppress his statements. As such we do not find any "cumulative effect" of error caused by the district court.

## VII. Postconviction Relief

 Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State,* 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts violation of constitutional safeguards, such as ineffective assistance of counsel, we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.*

Voelkers contends his trial counsel rendered ineffective assistance in failing to make an offer of proof on the survey to support the motion for a change of venue; in failing to adequately object to the inclusion of the premeditation instruction for first-degree murder in the marshalling instruction; in failing to make an adequate record of his objection to another instruction dealing with premeditation; in failing to present evidence of intoxication, intelligence, emotional makeup, or Voelkers' ability to otherwise knowingly waive his constitutional rights at the motion to suppress; in failing to call witnesses in support of his defense of diminished responsibility or intoxication; and in failing to challenge the first-degree kidnapping charge through adequate cross-examination, legal motions, opening statements, objections to instructions or final arguments.

 We find Voelkers' counsel did not render ineffective assistance in not making an offer of proof concerning the survey. A similar offer of proof had been made by counsel for Means. Moreover, Voelkers' counsel had also previously entered into a joinder agreement for all motions, including oral motions, made to the court. Moreover, we find the district court's denial of a change of venue to be proper in light of the fair and impartial jury impaneled.

 We also find counsel was not ineffective in allegedly failing to adequately object to the inclusion of the premeditated murder *instructions. We find these instructions to be an accurate representation of the law as applied to the facts. Voelkers also was not prejudiced by the inclusion of these instructions, even when his codefendants did not receive the same instruction.

 Where the record on direct appeal is not adequate to permit us to resolve the issue, we preserve the defendant's claim for postconviction proceedings so the facts may be so developed. *State v. Koenighain,* 356 N.W.2d 237, 238 (Iowa App.1984). This also gives the allegedly ineffective attorney the opportunity to explain his or her conduct. *State v. Coil,* 264 N.W.2d 293, 296 (Iowa

1978). We conclude there is an inadequate record for us to adjudicate Voelkers' contentions concerning the diminished responsibility and intoxication defense, the first-degree kidnapping charge, and the evidence presented at the hearing for the motion to suppress without counsel's explanation for his conduct. We therefore preserve defendant's ineffective assistance of counsel claim for a later proceeding.

## VIII. Conclusion

We find Voelkers received a fair trial by a fair tribunal. None of the actions by the original district court judge, nor the substituted judge resulted in prejudice to Voelkers which would require a reversal of his conviction or warrant a new trial. As such, we affirm his convictions.

**AFFIRMED.**