STATE of Iowa, Plaintiff-Appellee,

v.

Bobby OSHINBANJO, a/k/a Abdlganiya O. Oshinbanjo, Defendant-Appellant.

No. 83–1080.

Court of Appeals of Iowa.

Nov. 20, 1984.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Mary Jane Blink, Asst. Atty. Gen., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SCHLEGEL, and HAYDEN, JJ.

HAYDEN, Judge.

Defendant appeals from his conviction for sexual abuse in the third degree in violation of Iowa Code section 709.4. He claims: (1) the evidence was insufficient to support the jury's verdict; (2) he was denied equal protection, due process, and a fair trial by the trial court's refusal to allow individual voir dire of potential jurors concerning racial prejudice; (3) he was denied due process and equal protection by the trial court's refusal to allow voir dire to be reported; and (4) he should have been allowed to cross-examine a nurse regarding a statement made by the victim inconsistent with her trial testimony concerning prior sexual conduct.

■ Our review of criminal appeals is ordinarily on assigned error. *State v. Cuevas,* 322 N.W.2d 910, 911 (Iowa Ct.App. 1982). However, we make an independent evaluation of the totality of the circumstances on issues involving the violation of basic constitutional guarantees. *Id.*

■ I. *Sufficiency of the Evidence.* In reviewing a claim that the evidence was insufficient to support the verdict, we consider all of the evidence in the light most favorable to the State. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980). If the record provides substantial support, the jury verdict is conclusive. *Id.* at 338.

■ The complaining witness, Beth Gurnsey, testified that she was walking toward a parking lot in Sioux City at 11:45 p.m. on July 25, 1983. A man approached her, engaged her in conversation, and offered her a ride. When she refused the man grabbed her arm and she consented to get into the car. The man drove to a park where he forced her to engage in sexual intercourse. She described her assailant as a black male six feet tall and weighing 200 pounds. However, she stated to the police that she was not good at estimating heights. At another time, she revised her estimate to five foot six inches to five foot eight inches tall. At the police station Ms. Gurnsey was shown a photo display consisting of photographs of six men. She identified defendant as her assailant. Defendant is five foot seven inches tall and weighs 175 pounds.

Ms. Gurnsey described her assailant's car as a two-tone, two-door blue Cadillac with white furry carpet around the rearview mirror and steering wheel, dark tinted glass, felt dice hanging from the rearview mirror, a metal statue-like hood ornament, and textbooks on the front seat. Defendant's vehicle is a blue and white four-door Cadillac with smoke-tinted windows, a chrome statue hood ornament, with dice hanging from the rearview mirror and a fuzzy substance on the rearview mirror. Defendant was a college student at the time of the offense.

At trial defendant presented an alibi defense. He testified that he was in Ames attending Ramadan services from July 24 to July 27. Two persons testified in support of his defense. However, one witness was not positive defendant was in the service on the evening in question. The other witness was romantically involved with defendant. A statement of defendant's probation officer was admitted which stated that defendant was in Ames at 1:00 p.m. on July 26. A witness for the State testified he saw defendant in Sioux City on July 25, although the date was brought into question.

We find that there was sufficient evidence to support the jury's verdict of guilty. The positive identification of the defendant and his car was largely unimpeached although there were a few discrepancies. Evidence of defendant's alibi was not overwhelming or conclusive.

■ Defendant argues that the lack of substantial evidence is compounded by the State's failure to perform secretion typing tests to determine if defendant could have produced the semen found on the victim's

clothing. There was evidence, however, that the reliability of the test results would have been greatly reduced because of the presence of blood in the seminal stains which interferes with the typing process. We conclude that the failure to perform secretion typing tests in no way diminishes the substantiality of the evidence presented linking defendant to the crime.

■ II. *Voir Dire Concerning Racial Prejudice.* Prior to trial defendant requested that the trial court allow individual voir dire of jurors concerning racial prejudice. Defendant asserts that the trial court's denial of this request is reversible error.

The scope and manner of conducting voir dire are within the discretion of the trial court, and we will not reverse unless there has been a clear abuse of that discretion. *State v. Windsor,* 316 N.W.2d 684, 686 (Iowa 1982). In *Windsor,* the supreme court, following a line of cases decided by the United States Supreme Court, held that the trial court should permit counsel to make specific inquiry into racial prejudice when requested by a defendant accused of a violent crime against a person of a different race. *Id.* at 687. *See Rosales-Lopez v. United States,* 451 U.S. 182, 192, 101 S.Ct. 1629, 1636, 68 L.Ed.2d 22, 31 (1981). The court in *Windsor* further observed, however, that absent special circumstances, "the inquiry may be limited to a question of the panel sufficient to call the jurors' attention to the subject and require response from any juror harboring racial bias." *State v. Windsor,* 316 N.W.2d at 687.

■ In this case defendant does not claim that he was prohibited from making specific inquiry into racial prejudice on voir dire. The trial court stated at the pretrial conference that he would make the same inquiry from the bench as was made in *Windsor.* The court also indicated that counsel could specifically inquire as to the prejudices of the prospective jurors. Furthermore, after voir dire was completed defense counsel stated on the record that the trial court had not cut short voir dire.

In view of the nature of the case and the questioning that was permitted, we hold that it was not an abuse of discretion for the trial court to deny defendant's request to individually question prospective jurors out of the presence of the other jurors.

■ III. *Recording of Voir Dire.* Iowa Code section 624.9 provides in part:

In all appealable actions triable by ordinary or equitable proceedings, any party thereto shall be entitled to have reported the whole proceedings upon the trial or hearing, and the court shall direct the reporter to make such report in writing or shorthand, which shall contain the date of the commencement of the trial, the proceedings impaneling the jury, and any objections thereto with the rulings thereon. . . .

The trial court in the present case denied defendant's request that voir dire be reported. After reviewing the record we conclude that defendant was in no way prejudiced by this ruling. The trial court stated to defense counsel that if at any time during the course of voir dire a record needed to be made regarding a remark or other conduct, counsel had the option of stopping and requesting a record be made. Counsel did not make any such record. Furthermore, at the conclusion of voir dire defense counsel was given the opportunity to make a record for purposes of appeal regarding the conduct of voir dire. Counsel made no record at that time of any irregularities during voir dire. In fact, counsel stated that one reason defendant wanted voir dire reported was in case the court had cut short his questioning, but that the court had not done so. Since we find no prejudice to defendant from the court's failure to record part of the proceedings, we do not reverse defendant's conviction on that ground. *See State v. Newman,* 326 N.W.2d 796, 800 (Iowa 1982).

■ IV. *Prior Sexual Conduct of the Victim.* On direct examination Ms. Gurnsey testified that during the sexual abuse she told her assailant that she was a virgin. The prosecutor then asked her whether she

had been a virgin to which she responded, "No." On cross-examination the defense attorney asked without objection when Ms. Gurnsey had last had sexual intercourse prior to the assault. She testified that it had been a week. On redirect the prosecutor asked, "You've also described having had sexual intercourse against your will with this—with your assailant in Grandview Park. Is that the first time you ever had sex in your life with a black man?" The witness answered, "Yes."

The State called as a witness Mary Burgfechtel, the nurse who examined Ms. Gurnsey following the assault. On cross-examination the defense attorney attempted to have her testify that Ms. Gurnsey stated at that time that she had engaged in sexual intercourse earlier that day. The trial court sustained the State's objection on the ground that defendant had not complied with Iowa Rule of Criminal Procedure 20(5).

The trial court based its ruling on *State v. Ogilvie*, 310 N.W.2d 192, 194–95 (Iowa 1981), in which the supreme court held that a defendant who did not make timely pretrial application under rule 20(5) was prohibited from inquiring about the prior sexual conduct of a sexual abuse victim despite the fact that the inquiry was not designed to impugn the victim's character but was intended to explain a test performed on a semen stain found on the victim's bed sheet. In *Ogilvie*, however, there was no indication that the prior sexual conduct of the victim had already been alluded to several times before its exclusion by the trial court.

In this case we need not decide whether rule 20(5) prevents the defendant from raising the issue of prior sexual conduct of the complaining witness. There was another valid reason for not allowing the testimony. Regardless of the trial court's reason, its ruling will be upheld if it can be sustained on any grounds. *See State v. Baker*, 293 N.W.2d 568, 574 (Iowa 1980).

■ The first test in determining whether a statement is admissible as a prior inconsistent statement is whether a proper foundation has been laid for its admission. *State v. Gilmore*, 259 N.W.2d 846, 853 (Iowa 1977). The foundation alerts the witness as to the occasion of the prior statement and gives the witness an opportunity to admit or deny making the statement. *Id.* If the witness admits making the statement, then the statement is not admissible; but if he or she denies making the prior statement or cannot remember making it, then the statement may be admitted for purposes of impeachment. *State v. Wolfe*, 316 N.W.2d 420, 422 (Iowa Ct.App.1981). A showing of a proper foundation is a prerequisite to a successful appeal on the grounds that the trial court excluded a prior inconsistent statement. *State v. Pilcher*, 158 N.W.2d 631, 636–37 (Iowa 1968).

■ During defendant's cross-examination of Ms. Gurnsey, there was no foundation laid for later admission of a prior statement inconsistent with her trial testimony. She was not alerted to the nature of the prior statement or time and place of its making. Nor was she given an opportunity to admit or deny making the statement. Therefore, the trial court properly excluded the testimony concerning the prior inconsistent statement.

■ Furthermore, we note that the same result can be reached under the Iowa Rules of Evidence. If Burgefechtel's testimony about the victim's statements was offered to impeach the victim's credibility, it constituted extrinsic evidence of a prior inconsistent statement of a witness. As such, it was not admissible under rule 613(b), because the victim was not "afforded an opportunity to explain or deny" the prior statement. Iowa R.Evid. 613(b). If the testimony was offered as substantive evidence, it was hearsay under rule 801(d)(1)(A) because the victim's statement was not "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Iowa R.Evid. 801(d)(1)(A).

AFFIRMED.