**IN THE COURT OF APPEALS OF IOWA**

No. 14-1113
Filed May 20, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**STEVE THOMAS SCHNEIDER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Carroll County, Gary L. McMinimee (trial) and Thomas J. Bice (sentencing), Judges.


The defendant appeals his convictions for six counts of sexual abuse in the third degree. **AFFIRMED.**



Alfredo Parrish and Andrew Dunn of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Tyler Buller, Assistant Attorneys General, and John Werden, County Attorney, for appellee.



Heard by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Steve Schneider was convicted of six counts of sexual abuse in the third degree, in violation of Iowa Code sections 709.1 and 709.4 (2009), and sentenced to forty years' imprisonment. On appeal, Schneider raises numerous challenges to his convictions, raining constitutional and procedural arrows on the trial court and the trial as if he were raiding a slow-moving wagon train. We conclude his numerous shots miss the mark or are otherwise better raised in postconviction-relief proceedings. We pluck the missives from the sides of the circled Conestogas and address them seriatim.

I.

In 2006, C.N. and her sister moved from Florida to Iowa to live with their maternal grandparents while their mother, June, was deployed overseas for military service. At the time, C.N. was eleven years old and in fifth grade.

In 2008, Schneider, June's brother, moved to another house on the grandparents' farm property. A fair interpretation of the evidence, when viewed in the light most favorable to the verdicts, is Schneider began grooming C.N. as a victim after moving to the property. C.N., her sister, and their cousins spent a great deal of time at Schneider's house hanging out and playing videogames. The children frequently stayed overnight with Schneider, sleeping in the same bed with him. At some point, Schneider started to have "wandering hands." Schneider bought gifts for C.N., including a cell phone and bras. In January 2009 Schneider and C.N. had sexual intercourse for the first time. They had sex frequently during the period February through June 2009. Schneider told C.N. to

keep their "relationship" a secret because "nobody would understand." The relationship ended in 2011 when C.N. and her sister moved back to Florida to live with their mother. C.N. was sixteen at the time the relationship ended.

In 2012, C.N. told her mother, June, that she had had a sexual relationship with Schneider, but C.N. asked June not to do anything about it. June contacted law enforcement in Florida, and they referred her to the authorities in Iowa. June did not see Schneider in person until August 2013. At that time, she confronted her brother about his relationship with C.N. Schneider hung his head, slumped his shoulders, and said, "yeah, she's right." When June's other brother, Dean, learned of the relationship, he also confronted Schneider, asking if Schneider had slept with C.N. Schneider replied, "yes."

In December 2013 Schneider was charged with two counts of sexual abuse in the second degree and four counts of sexual abuse in the third-degree. In April 2014, Schneider filed a motion for a bill of particulars. The State filed its amended and substituted trial information, charging Schneider with six counts of sexual abuse in the third-degree, each count corresponding to one month for the time period January through June 2009. The case was tried to a jury, and the jury returned a guilty verdict on each count. After unsuccessfully moving for new trial on various grounds, Schneider timely filed this appeal.

II.

Schneider first challenges the sufficiency of the evidence supporting his convictions. We review challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Edouard*, 854 N.W.2d 421, 431 (Iowa

2014). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We will uphold a verdict if it is supported by substantial evidence. *See id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

Schneider first contends there was not sufficient evidence he performed a "sex act" during the months of February through June 2009, corresponding to counts II-VI of the amended trial information. Jury Instruction No. 15 defined a "sex act" as "any sexual contact: . . . 2. By penetration of the penis into the vagina or anus." C.N. testified as follows:

> Q: And at that time when you say sexual contact, tell the jury what you mean by that? A: When I say sexual contact, I mean that his penis would go into my vagina or that would happen.
> Q: Did that happen in January 2009? A: Yes, sir.
> Q: Did it happen at least once in January 2009? A: Yes, sir.
> Q: How frequently did this start happening between you and Steve? A: This would happen almost every week but definitely every month that this sexual contact would happen.
> . . . .
> Q: Going on to February 2009, did you continue to have sex with your uncle. A: Yes, I did.
> Q: Did it happen at least once? A: It happened at least once, yes.
> . . . .
> Q: And then in March 2009, did you have sex with your uncle? A: Yes, sir.
> Q: And in April 2009 at least once? A: Yes, sir.
> Q: And in May 2009? A: Yes, sir.
> Q: And in June of 2009? A: Yes, sir.

As we understand Schneider's challenge, he does not contend that inserting his penis into C.N.'s vagina is not a "sex act." Instead he contends C.N. did not explicitly testify that a "sex act" occurred every month. In other words, he challenges the form of the questions; for example, whether the question "And in May 2009?" and the corresponding answer, "Yes, sir," is sufficient to establish a "sex act" occurred during that month.

We conclude the argument is without merit. It is clear C.N.'s testimony regarding each of the challenged months, when viewed in context of the sequenced questions, related back to her definition of sexual contact. The specificity of C.N.'s testimony distinguishes this case from *State v. Topete-Duenas*, No. 08-1381, 2009 WL 4114154, at *1 (Iowa Ct. App. Nov. 25, 2009), upon which Schneider relies. In that case, the alleged victim was unable to express with any specificity the contact between herself and the defendant. *See id.* at *6. She did not know what the term "genital area" meant. *See id.* Neither the alleged victim nor her mother elaborated on their meaning of the term "inappropriate part." *See id.* The jury was thus left to speculate whether a "sex act" occurred. In contrast, in this case, C.N. explicitly testified that "sexual contact" meant "his penis would go into my vagina." Such contact is a "sex act" within the meaning of the instruction given. She clearly testified that "sexual contact" occurred in each of the months corresponding to the different counts in the amended trial information. The jury was not left to speculate here.

Schneider next contends there was no direct testimony that he and C.N. were not living together as husband and wife, an element of the offense. We

conclude this challenge is without merit. There is no requirement that there be "direct testimony" to establish each of the elements of the offenses. On the contrary, the State may offer both direct and circumstantial evidence. The evidence showed that Schneider and C.N. were not living together at all on the offense dates: she resided in her grandparents' home, and he resided in a separate home on the same farm property. The evidence also established that Schneider was legally married to another, although they were separated and in the process of divorcing. *See* Iowa Code § 595.19(2) (providing a marriage is void when either party has a living husband or wife). On the offense dates, C.N. was under fourteen years of age. *See* Iowa Code § 595.2(2), (3) (setting minimum age for legal marriage at sixteen). Schneider and the victim were also blood relatives—uncle and niece. *See* Iowa Code § 595.19(1)(b) (providing that marriage between uncle and niece is void). Jurors are not asked to check their common sense at the courthouse doors. Viewing the evidence in the light most favorable to the State, including all reasonable inferences to be drawn from the evidence, there was sufficient evidence to establish Schneider and C.N. were not living together as husband and wife on the offense dates. *See Sanford*, 814 N.W.2d at 615.

In his final shot at the sufficiency of the evidence, Schneider contends C.N.'s testimony is not credible and cannot support the verdicts. "Generally, the credibility of witnesses is left to the jury." *State v. Mitchell*, 568 N.W.2d 493, 503 (Iowa 1997). In *State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993), the court recognized an exception to the general rule where "[t]he testimony of a

witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court." Relying on that principle, the *Smith* court reversed the defendant's convictions for sexual abuse and assault where "the accounts of alleged abuse [were] inconsistent, self-contradictory, lacking in experiential detail, and, at times, border[ed] on the absurd." 508 N.W.2d at 103. We have great faith in the competency of juries; the instances in which a court should consider testimony a nullity due to credibility determinations are "limited." *State v. Hobbs*, No. 12–0730, 2013 WL 988860, at *3 (Iowa Ct. App. Mar. 13, 2013). In review of the record as a whole, we cannot conclude C.N.'s accounts of abuse were inconsistent, contradictory, or absurd. C.N.'s accounts and testimony regarding the sex abuse were largely consistent. Her testimony was corroborated by Schneider's admissions to June, his sister, and Dean, his brother. "The jury was free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

Accordingly, we conclude Schneider's challenges to the sufficiency of the evidence fails.

### III.

Schneider raises numerous claims of ineffective assistance of counsel. Ineffective-assistance-of-counsel claims normally are preserved for postconviction relief actions to allow for a more thorough record to be developed and to give counsel an opportunity to respond to the claim. *See State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). Such claims may be addressed on direct

appeal if the record is sufficient to evaluate the claim. *See State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013); *State v. Willis*, 696 N.W.2d 20, 22 (Iowa 2005). Although Schneider raises the claims under both the federal and Iowa constitutions, he does not argue for a different standard under the Iowa Constitution. "Where a party raises issues under the Iowa Constitution and the Federal Constitution, but does not suggest a different standard be applied under the Iowa Constitution, we generally apply the federal standard." *Edouard*, 854 N.W.2d at 452.

To establish his claim for ineffective assistance of counsel, Schneider must establish that trial counsel failed to perform an essential duty and that this failure resulted in prejudice. *See State v. Westeen*, 591 N.W.2d 203, 207 (Iowa 1999). To establish that counsel failed to perform an essential duty, Schneider must establish "the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The attorney's performance is measured against "prevailing professional norms," and it is presumed the attorney performed competently. *See id.* The ultimate inquiry regarding prejudice is whether counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the convictions are unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Collins v. State*, 588 N.W.2d 399, 402 (Iowa 1998) (citation and

quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the defendant's trial." *Id.*

A.

In his first claim, Schneider contends his trial counsel provided constitutionally deficient assistance by failing to object to twenty-seven allegedly leading questions during the course of three-day trial. A leading question is one that assumes a fact in controversy "so the answer may really or apparently admit that fact." *Giltner v. Stark*, 219 N.W.2d 700, 713 (Iowa 1974). Iowa Rule of Evidence 5.611(c) provides "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop that witness's testimony." Nonetheless, leading questions may be proper and necessary "where the witness is testifying as to some form of sexual abuse." *State v. Mueller*, 344 N.W.2d 262, 266 (Iowa 1983).

We conclude Schneider has not established a breach of duty or resulting prejudice. It is questionable whether all of the challenged questions were in fact leading questions. In any event, an attorney does not have a duty to raise every possible evidentiary objection. *See State v. Pierson*, 554 N.W.2d 555, 562-63 (Iowa Ct. App. 1996) (noting objections likely would not have succeeded and counsel need not make every objection to satisfy the standard of normal competency). More important, Schneider cannot establish prejudice. Even if an objection to the form of the question were interposed and sustained, the prosecutor would have had the opportunity to rephrase the question to obtain the same testimony. *See e.g., State v. Frazer*, 267 N.W.2d 34, 37 (Iowa 1978)

(finding no prejudice to support motion for new trial where prosecutor rephrased leading questions in response to objection); *Williams v. State*, No. 06-2036, 2008 WL 375096, at *2 (Iowa Ct. Feb. 13, 2008) (holding no *Strickland* prejudice established where leading question did not affect the outcome of trial). Because of this "[a]n almost total unwillingness to reverse for infractions has been manifested by appellate courts." Iowa R. Evid. 5.611(c), advisory committee's note to subdivision (c), c*iting* 3 Wigmore on Evidence § 770.

B.

Schneider's next constitutional shots target his counsel's failure to object to certain statements made by the prosecutor during opening and closing. We apply the following standard to assess the prosecutorial misconduct claims:

> In analyzing the defendant's ineffective-assistance-of-counsel claim, our first step is to assess whether the record demonstrates, as a matter of law, the existence or absence of a meritorious due process violation. Thus, we must consider whether the prosecutor was guilty of misconduct in the particulars identified by [defendant] and whether the record shows [defendant] was prejudiced, i.e., denied a fair trial.
> If the record is insufficient to make this determination, we must preserve the defendant's ineffective-assistance claim for a fuller development of the pertinent facts. If, however, the record shows that either element is lacking as a matter of law, we will affirm [defendant's] conviction without preserving his due process claim for a later postconviction relief action.

*State v. Graves*, 668 N.W.2d 860, 869–70 (Iowa 2003).

"To show a denial of due process, the defendant must establish the prosecutor's misconduct deprived the defendant of a fair trial." *Id.* at 876. Relevant factors include: "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the

strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Id.* at 877. "The most important factor under the test for prejudice is the strength of the State's case." *State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006). We turn our attention to the particular statements challenged.

Schneider contends the prosecutor made several statements during opening and closing that elevated Schneider's culpability to that of a deviant responsible for multiple crimes against multiple victims. He notes the prosecutor referred to Schneider as a "serial sexual abuser" and a sexual "predator." Also, when the prosecutor was referring to the modus operandi of sexual predators, generally, the prosecutor used plural nouns, stating "troubled young girls are exploited by predators" and "young girls who don't know any better, young girls who are needy, young girls with family issues" are victims of abusers. Finally, during closing argument, the prosecutor told the jury the State chose to charge six counts, one for each of the first six months of 2009, and stated, "You heard the evidence. Also there could have been more counts."

We conclude Schneider failed to establish a threshold due process violation. The prosecutor's use of the term serial was not misconduct. "Serial," in a criminal context, is defined as "performing a series of similar acts over a period of time." Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/serial. While the defendant is certainly correct when he argues the term "serial killer" implies multiple victims, that is due solely to the nature of the offense—a victim can be killed only once—and not the denotation

of the word "serial". Here, the offenses were similar acts performed over a period of time with the same victim; by definition the offenses were "serial." The prosecutor thus did not engage in misconduct. The prosecutors use of the plural nouns "girls," "teenagers," and "predators" in closing was used in making generalities regarding predatory conduct in general—not as a suggestion that Schneider had abused multiple individuals. It is not misconduct. *See State v. Carey*, 709 N.W.2d at 560 (viewing the challenged remarks "in context"). Finally, the statement "there could have been more counts" is not misconduct because the evidence admitted would have supported more charges. *See State v. Bowers*, 656 N.W.2d 349, 355 (Iowa 2002) (finding similar statements not improper and counsel not ineffective for not objecting).

The defendant also claims the prosecutor improperly vouched for the credibility of the witnesses. We disagree. The prosecutor's comments on the evidence were "proper subjects of discussion during closing arguments." *See State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App. 1994) (citing *United States v. Spivey*, 859 F.2d 461, 466 (7th Cir. 1988)). The prosecutor commented on the evidence; he did not personally vouch for any witness's credibility. *See id.*; *see also Graves*, 668 N.W.2d at 874 (allowing prosecutors the latitude to "argue the reasonable inferences and conclusions to be drawn from the evidence" but not to express personal beliefs); *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975) (allowing prosecutors some latitude in analyzing evidence in closing arguments).

Schneider also contends the prosecutor impugned the integrity of defense counsel and intimated to the jury that defense counsel was trying to fool the jury.

Specifically, Schneider aims at the prosecutor's statements that the defendant's theory of the case was smoke and mirrors and crazy. We conclude Schneider has failed to establish a due process violation. A lawyer is entitled to characterize an argument with an epithet as well as a rebuttal. *See Williams v. Borg*, 139 F.3d 737, 745 (9th Cir 1998). The prosecutor's comments do not constitute misconduct as the statements were directed to the theory of the defense and not at defense counsel. *See, e.g.*, *United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013) (characterizing defense theory as "smoke and mirrors" was not directed at defense counsel and was not misconduct); *Williams*, 139 F.3d at 744-45 (characterizing defense argument as "trash" was not directed at defense counsel and was not misconduct).

C.

We address the remainder of the defendant's ineffective-assistance-of-counsel claims.

Schneider's contention that his counsel rendered constitutionally deficient performance for failing to interpose hearsay objections to two questions posed to C.N. is without merit. The challenged statements are not hearsay, and Schneider has not established prejudice.

We preserve for postconviction relief Schneider's claim that his trial counsel should have requested a change of venue because several of the jurors knew the prosecutor and the defendant's family and created "a substantial likelihood a fair and impartial trial [could not] be preserved with a jury selected from that county." *See State v. Newell*, 710 N.W.2d 6, 33 (Iowa 2006); *see also*

Iowa R. Crim. P. 2.11(10)(b). We conclude the record is not sufficiently developed to resolve this claim on direct appeal.

D.

Schneider contends the cumulative prejudice of the constitutional violations denied him the right to a fair trial. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012) (explaining that "if a claimant raises multiple claims of ineffective assistance of counsel, the cumulative prejudice from those individual claims should be properly addressed under the prejudice prong of *Strickland*"). As above-stated, Schneider failed to establish a breach of duty for the claims addressed on direct appeal. There can be no cumulative prejudice within the meaning of *Clay* from non-meritorious claims. *See id.* at 501-02 (listing five steps dealing with multiple claims). Any further cumulative prejudice analysis must occur in postconviction-relief proceedings with respect to the claim preserved and any other such claims, if any, Schneider may assert in such proceedings.

IV.

Schneider next contends his convictions "violate his rights to due process and to be free from double jeopardy" as protected by the federal and state constitutions. Although phrased broadly, the crux of his argument is that the amended and substituted trial information and the evidence at trial did not give him "constitutionally sufficient notice" of the charges against him. *See State v. Davison*, 245 N.W.2d 321, 324 (Iowa 1976); *State v. See*, 805 N.W.2d 605, 607 (Iowa Ct. App. 2011). Specifically, the month-long time frames for each count charged did not provide sufficient specificity and notice regarding the offenses

allegedly committed. *See Valentine v. Konteh*, 395 F.3d 626, 637 (6th Cir. 2005). The argument is without merit.

As a practical matter of proof, there is an inherent difficulty in "establishing precise times and places of abuse to children." *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003). As a matter of substantive criminal law, "the State is not required to prove the precise time and place" to establish sex abuse. *See id.*; *State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999) (noting "any uncertainty as to the precise date is immaterial"); *State v. Rankin*, 181 N.W.2d 169, 172 (Iowa 1970) (stating the State is not required to prove the exact date of a sexual offense). The exact date and time and place are not elements of the offense. *See State v. Brown*, 400 N.W.2d 74, 77 (Iowa Ct. App. 1986) ("The date fixed in the indictment or information for the commission of a crime is not material, and a conviction can be returned upon any date within the statute of limitations . . . ."); *State v. Griffin*, 386 N.W.2d 529, 532 (Iowa Ct. App. 1986) (holding statute defining second degree sexual abuse "does not make a particular time period a material element of the offense"); *see also* Iowa Code § 709.4 (defining sexual abuse in the third degree as performing a sex act "under any of the following circumstances," all relating to age, mental capacity, family relationship, but none of which relate to a date or time); Iowa Criminal Jury Instruction 900.3 (allowing for proof an act occurred "about" a date). Thus sex abuse can be charged without identifying a specific offense date but instead with an offense date range covering a fairly large period of time. *See Griffin*, 386 N.W.2d at 532; *State v. McEndree*, No. 12-0983, 2013 WL 3458217, at * (Iowa Ct. App. July 10, 2013)

(encompassing the period between Thanksgiving 2000 and summer 2002). Finally, as a matter of constitutional law, in *Valentine*, the court noted it "and numerous others have found that fairly large time frame windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." 395 F.3d at 632 (including cases with periods up to three years).

With those principles in mind, we turn to the amended and substituted trial information and evidence adduced at trial. The trial information clearly identified the date range for each of the counts. The one-month range for each count was allowed under our substantive criminal law and provided constitutionally sufficient notice of the charges against Schneider. *See Yeo*, 659 N.W.2d at 550-51; *see also Valentine*, 395 F.3d at 632-33. The alleged conduct was identified with sufficient specificity to provide Schneider with notice of the nature of the charges and the evidence to be adduced at trial. The trial information specified that Schneider engaged in vaginal intercourse with C.N. almost daily during the specified months. Vaginal intercourse falls within the meaning of a "sex act" as defined in section 702.17(1). At trial, C.N. testified when she said "sexual contact" with Schneider she meant "his penis would go into my vagina." At trial, C.N. testified they had sex "almost every week but definitely every month that this sexual contact would happen." She also agreed she had sex with Schneider in January, February, March, April, May, and June 2009—each of the specific months of the trial information. We thus conclude Schneider had substantively and constitutionally sufficient notice of the charges against him.

V.

The defendant challenges the trial court's voir dire. "The scope and manner of conducting voir dire are within the discretion of the trial court, and [we] will not reverse unless there has been a clear abuse of that discretion." *See State v. Oshinbanjo*, 361 N.W.2d 318, 321 (Iowa 1984). Schneider is Caucasian. C.N.'s father is African-American. C.N. is of mixed race. Knowing the racial makeup of Carroll County and that it was unlikely there would be African-American jurors, the court expressed concern whether inquiry into potential bias should be made. During the pretrial conference, neither side objected to the court making some general inquiry. At the beginning of trial, the court told the attorneys the two general questions it planned to ask. Defense counsel stated he didn't think race "should be a factor" and didn't think it "should even be mentioned." During discussion, the court noted its obligation to ensure a fair and impartial jury and that the facts of this case implicated race and it needed to be addressed.

A trial court must inquire about racial prejudice when requested by a defendant accused of a violent crime and the victim is a member of a different race. *See Rosales-Lopez v. United States*, 451 U.S. 182, 192 (1981). For the court not to make such an inquiry is an unconstitutional abuse of discretion. *Id.* at 190. Here, the defendant at first acknowledged the potential problem, but later objected to the questions. Nonetheless, the district court decided to inquire further. In this case, we conclude it is not material whether the defendant or the court decided to conduct the inquiry. An Illinois court stated it well: "In our

society, there are a considerable number of people of all races who have strong negative feelings about interracial relationships. It was important to know if any of the prospective jurors had such negative feelings about these relationships that he or she could not be fair and impartial." *People v. Clark*, 664 N.W.2d 146, 152 (Ill. Ct. App. 1996). There was no abuse of discretion for the district court to conduct such an inquiry here for the purpose of ensuring the integrity of the trial process.

## VI.

In addition to cumulative prejudice analysis regarding his claims of ineffective assistance of counsel, Schneider contends the cumulative effect of all errors denied him a fair trial. We find no error. We conclude Schneider was provided with a fair trial. *Cf. Carey*, 165 N.W.2d 27, 36 (Iowa 1969) (finding some merit in each of the assigned errors, so the cumulative effect was to deny a fair trial); *State v. Hardy*, 492 N.W.2d 230, 236 (Iowa Ct. App. 1992) (finding "several doses of unfair prejudice . . . when combined, denied" a fair trial). Here, "the [alleged] errors, in the aggregate, do not come close to achieving the critical mass necessary to cast a shadow upon the integrity of the verdict." *See United States v. Sepulveda*, 15 F.3d 1161, 1196 (1st Cir. 1993).

## VII.

Finally, Schneider claims the court violated his due process rights by denying his request for a full evidentiary hearing on his ineffective-assistance claims raised in his motion for new trial. He argues the language "an opportunity to be heard" in Iowa Rule of Criminal Procedure 2.24(2)(a) shows a hearing is

intended. The court overruled the motion, noting the request for an evidentiary hearing was "so trial counsel can testify regarding the claims of ineffective assistance," and concluding "[t]here has been no showing on this motion what this testimony would be and it is not apparent to this court how any such testimony would assist in the disposition of this motion." In his motion to reconsider, Schneider argued he should have a hearing to allow counsel "to explain their performance when the case is fresh in their mind and not years down the road in post-conviction proceedings." Ruling on the motion to reconsider, the court noted it previously ruled the allegations "did not demonstrate facts showing any deficiencies in trial counsel's performance." The court concluded "the requested hearing would amount to nothing more than a fishing expedition," and it would not be "an appropriate use of judicial resources to hold a hearing for such an activity."

Due process requires "the opportunity to be heard at a meaningful time and *in a meaningful manner*." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (emphasis added). A written motion may satisfy the requirement. *See Sweet v. Comm'r of Human Servs.*, 702 N.W.2d 314, 321 (Minn. Ct. App. 2005). We can imagine there might be circumstances in which holding an evidentiary hearing in conjunction with a motion for new trial may be expedient, but we cannot say the district court abused its sound discretion in denying the request for an evidentiary hearing in this case. Any further record necessary to support Schneider's claims can be pursued through postconviction-relief proceedings.

## VIII.

For the foregoing reasons, we affirm the defendant's convictions.

**AFFIRMED.**