**STATE of Iowa, Appellee,**

v.

**Thomas F. GENTILE, Appellant.**

**No. 93–76.**

Supreme Court of Iowa.

April 20, 1994.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sherri Soich and Robert P. Ewald, Asst. Attys. Gen., John P. Sarcone, County Atty., and Odell McGhee, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

A jury convicted Thomas Gentile of five counts of first-degree fraudulent practice and one count of second-degree fraudulent practice. *See* Iowa Code §§ 714.8, 714.9, 714.10 (1991). He appeals, contending that (1) the trial judge committed judicial misconduct, (2) the evidence was not sufficient to sustain the convictions, and (3) the court should have given his requested instruction. We affirm.

Gentile managed a siding company, National Energy, Inc. During the time in question, Marvin Banga worked for National as a salesperson. Banga used leads to sell siding jobs for National. Telemarketers and canvassers working for National generated these leads. Banga would call on the leads directly and close the sales.

Sometimes, customers wanted National to finance the work. On these occasions, Banga would take their credit applications and give them to Gentile. Gentile arranged all the financing, conducted credit checks, and completed security agreements. Independent contractors did the actual installations.

To secure the financing, customers sometimes gave National a mortgage on the real estate where the work was to be done. Be- fore 1991 Gentile sold some of the mortgages to Cliff Burnham, a friend and former business partner. In the beginning, Burnham personally visited the properties and met with the affected property owners.

Later, Burnham assumed the mortgage documents he received from Gentile were genuine and stopped making the personal inspections. At first the dealings between Gentile and Burnham went smoothly. Burnham received timely payments from Gentile. Burnham assumed that Gentile was merely passing through payments from the mortgagors. In fact, a number of the mortgagors had not signed any mortgages over to Gentile or National.

Eventually, Gentile began making late payments. Burnham then wrote to each of the mortgagors, instructing them to make future payments directly to him. It was at this point that Burnham learned of Gentile's scheme.

Based on these bogus mortgages, the State filed an eight-count trial information against Gentile. Seven counts were for fraudulent practice in the first degree. The eighth count was for fraudulent practice in the second degree. The jury convicted Gentile of five counts of first-degree fraudulent practice and the one count of second-degree fraudulent practice.

I. *Judicial Misconduct.*

Gentile complains that the district court twice committed judicial misconduct by making allegedly improper comments in the jury's presence.

■ A. *Comment during Banga testimony.* On redirect, the prosecutor showed Banga two security agreements and one allegedly forged mortgage. Banga testified he had nothing to do with financing and had never seen the documents. Instead of showing Banga the remaining sets of security agreements and mortgages, the prosecutor went to another line of questioning.

Gentile's lawyer cross-examined Banga two more times. At the end of the second cross-examination, Gentile's lawyer asked the court

to require Banga to remain available to testify. In support of his request, the lawyer said he wanted to question Banga about any other security agreements and mortgages that the prosecutor might produce. In the interest of time, the prosecutor then showed Banga all of the remaining financial instruments. As before, Banga denied any knowledge of the instruments.

The district court then broke in on the prosecutor's questioning of Banga and inquired of Gentile's counsel as follows:

THE COURT: Well, [Defense Counsel], I guess I don't understand what your point is. As I understand this witness, he's indicated that he did not at any time sign any mortgages. He has been shown now five or six different mortgages. And each one, his name does not appear there. He indicates he hasn't seen these or hasn't signed these. I guess I don't understand what the point is of going through each of these exhibits.

[DEFENSE COUNSEL]: Well, Judge, we don't know that until he sees it. The next one that we get to look at he may say yes. You know, am I to assume that without showing them to him and giving him a chance to say that he didn't sign that one?

THE COURT: Do you have any knowledge that his signature is on any of them? Do you have in your discovery? I assume that you've made discovery in this case.

[DEFENSE COUNSEL]: This is, this is the first chance I've been shown these items, Your Honor, is right here in the courtroom today.

[PROSECUTOR]: Judge, we have just one more.

THE COURT: All right.

[PROSECUTOR]: Actually, two more.

With this the prosecutor showed the remaining documents to Banga. Out of the presence of the jury, Gentile's lawyer objected to the court's comments as requiring disclosure of defense strategy. The lawyer suggested any similar comments should be out of the jury's presence because what the judge says carries much more weight with the jury than what the lawyers say.

It is true that a fair trial tribunal is a basic requirement of constitutional due process. From this it follows that trial judges should not only be fair and impartial but they should also avoid any conduct from which a jury could infer bias against either party. This is important because jurors are particularly sensitive to a judge's views. Any indication that a judge feels one way or another toward the parties, counsel, and witnesses might influence the jury more than the evidence. Obviously, then, a trial judge should not telegraph to a jury, by purposeful exclamations, gestures or facial expressions, the judge's approval or disapproval, belief or disbelief, in the testimony of witnesses or arguments of counsel. *State v. Larmond*, 244 N.W.2d 233, 235–36 (Iowa 1976) (citations omitted).

> On the other hand we have recognized that the judge's role is not restricted to the functions of an umpire or referee in a contest between opposing parties or counsel. We have declared that a trial judge has the duty to control and conduct its court in an orderly, dignified and proper manner. In fulfilling its role, occasions will arise when a trial judge is constrained to intervene on its own volition to protect a witness from abusive treatment or unnecessary humiliation, to stay the pursuit of a patently irrelevant line of inquiry—particularly when it may obfuscate the issues and mislead the jury, to act to avert unnecessary repetition, to require that the proceedings move forward without undue delay and to take reasonable measures to insure that the evidence is intelligently presented to the jury.

*State v. Cuevas*, 288 N.W.2d 525, 531 (Iowa 1980) (citations omitted).

Here the prosecutor's line of questioning seemed to be unnecessarily repetitious. The judge was merely asking Gentile's lawyer whether the questioning was really necessary. The judge's statement was in no way improper. And Gentile's lawyer invited the judge's inquiry by insisting on the opportunity to cross-examine Banga on the financial instruments in question. The court gave Gentile's lawyer the chance to cross-examine Banga, and was merely interested in moving

the trial along when the inquiry was made. We see nothing here rising to the level of judicial misconduct.

■ B. *Announcement of recess before rebuttal testimony.* After the judge excused Gentile's sixth witness, Gentile's lawyer asked for a recess, which the judge granted. After the recess, Gentile's lawyer rested. The judge then asked the prosecutor if he had any rebuttal witnesses. Following a sidebar conference with the lawyers, the judge made the following statement to the jury:

> Members of the jury, apparently [*the prosecutor*] *was caught by somewhat of a surprise,* wants some time to think about rebuttal witnesses. And the court is going to allow him some time.

Out of the presence of the jury, Gentile's lawyer moved for mistrial, arguing that the italicized portion of the judge's statement to the jury was a comment on Gentile's failure to testify. The court overruled the motion. Gentile argues here that he was entitled to a mistrial because of this statement.

■ A trial judge may not comment to the jury on an accused's failure to testify. The test in determining whether there has been such a comment is whether

> the language used ..., in context, would "naturally and necessarily" be understood by a jury to be a comment on the failure of the accused to testify.

*State v. Taylor,* 336 N.W.2d 721, 727 (Iowa 1983) (citation omitted). The question here is whether the judge's statement, taken in context, would be understood by the jury as a comment on Gentile's failure to testify.

We agree with the State that the jury would not have naturally and necessarily understood the judge's statement to be a comment on Gentile's failure to testify. As the State points out, the jury could well have anticipated that the defense would call another nonparty witness to discredit the State's witnesses. This is so because the defense had just called six witnesses to do this same thing. At the point that the judge made the statement, no one had done or said anything that would have led the jury to believe Gentile would be the next witness.

II. *Sufficiency of the Evidence.*

A person commits fraudulent practice by

> [*k*]*nowingly* execut[ing] or *tender[ing]* a false certification under penalty of perjury, false affidavit, or *false certificate, if the* certification, affidavit, or *certificate is required by law or given in support of a claim for* compensation, indemnification, restitution, or *other payment.*

Iowa Code § 714.8(3) (emphasis added).

Gentile moved for judgment of acquittal at the close of the State's case and again at the close of all the evidence. Gentile argued then, as he argues now, that there was not substantial evidence that he committed fraudulent practice. Gentile believes the State proved—at most—that he executed or tendered mortgages. Mortgages, he says, are instruments, not certificates, certifications, or affidavits. So, Gentile concludes, if the State proved he committed a crime, the crime was forgery, not fraudulent practice. The State argues there was substantial evidence that Gentile committed fraudulent practice. For reasons that follow, we agree with the State.

Gentile sold the bogus mortgages in question to Burnham. Thus, he tendered them.

Each of the bogus mortgages contained an acknowledgment of notary Michelle Sternhagen in which she attests that the named mortgagor in each instance "executed the foregoing instrument" in her presence. This acknowledgment is required by law. *See* Iowa Code § 558.20 ("The acknowledgment of any ... instrument in writing by which real estate in this state is ... encumbered, if made within this state, must be before some ... notary public within the state.").

The acknowledgment is a certificate. *See id.* ("Each of the officers above named is authorized to take and certify acknowledgments of all written instruments, authorized or required by law to be acknowledged."); *see also* Black's Law Dictionary 23 (6th ed. 1990) (acknowledgment as to instruments: "Formal declaration before authorized official, by person who executed instrument, that it is his free act and deed. The certificate of

the officer on such instrument that it has been so acknowledged.").

This acknowledgment or certificate supports a "claim for ... other payment." *See* Black's Law Dictionary 1009 (6th ed. 1990) (a mortgage is a lien on land for payment of a debt).

In summary, there was substantial evidence that by selling the bogus mortgages to Burnham, Gentile—in each instance—(1) tendered a false certificate (2) that is required by law to be given or (3) is given in support of a claim for payment. In short, there was substantial evidence to support the convictions for fraudulent practice.

III. *Instruction.*

■ Gentile wanted the district court to instruct the jury as to whether a mortgage can constitute a false certificate under section 714.8(3). This is a fact question, Gentile argues, and as such should have been determined by the jury.

The district court refused and instructed the jury—in the marshaling instruction—as if the mortgages in question were certificates under the statute. So the court decided as a matter of law that the mortgages with the acknowledgments were certificates for section 714.8(3) purposes. The jury, however, was still instructed that the State had to prove the remaining elements of fraudulent practice.

We believe—as the State urges and the district court concluded—that the mortgages with acknowledgments were certificates as a matter of law. We conclude the court properly instructed the jury on this issue.

IV. *Disposition.*

The district court did not commit judicial misconduct when it commented (1) during Banga's testimony and (2) that the prosecutor was caught by surprise when Gentile rested. There was substantial evidence from which the jury could reasonably conclude Gentile committed fraudulent practice. The district court properly concluded, as a matter of law, that the mortgages with the acknowledgments were certificates under section 714.8(3). The court therefore properly de-

nied Gentile's requested instruction that this question was one of fact for the jury. We therefore affirm.

**AFFIRMED.**