# IN THE COURT OF APPEALS OF IOWA

No. 23-0335
Filed June 19, 2024

**ESTATE OF KATHLEEN HAZEN, by STEVEN J. HAZEN, Administrator, and STEVEN J. HAZEN, Individually,**
 Plaintiffs-Appellants,

**vs.**

**GENESIS HEALTH SYSTEM d/b/a GENESIS MEDICAL CENTER, and WILLIAM E. OLSON, M.D.,**
 Defendants-Appellees.

_____

Appeal from the Iowa District Court for Scott County, Meghan Corbin, Judge.

Plaintiffs appeal the district court's judgment entered on a defense verdict in a medical malpractice case. **AFFIRMED.**

William J. Bribriesco and Anthony J. Bribriesco of Bribriesco Law Firm, PLLC, Bettendorf, for appellants.

Graham R. Carl and Nancy J. Penner of Shuttleworth & Ingersoll, Cedar Rapids, and Brian T. Fairfield and Jason P. Butt of Brooks Law Firm, P.C., Rock Island, Illinois, for appellees.

Brenna Bird, Attorney General, and Tessa M. Register (until withdrawal), Assistant Solicitor General, and David M. Ranscht, Assistant Attorney General, for amicus curiae State of Iowa.

Heard by Bower, C.J., and Schumacher, Ahlers, Badding, and Buller, JJ. Langholz, J., takes no part.

**BOWER, Chief Judge.**

The Estate of Kathleen Hazen and Steven Hazen (the Hazens) appeal the district court's judgment entered on a jury verdict in favor of Dr. William Olson in their medical malpractice action. The Hazens claim the court erred in preventing them from impeaching Dr. Olson with evidence of prior professional disciplinary matters, instructing the jury on alternative methods of treatment, and engaging in "prejudicial misconduct during trial." Upon review, we affirm.

## I.    *Background Facts and Proceedings*

Kathy Hazen underwent a laparoscopic cholecystectomy on February 8, 2016. Kathy went home following the surgery, but she returned to the hospital on February 13 with severe pain in her abdomen, nausea, and vomiting. Dr. Olson continued to monitor Kathy's condition. On February 22, blood was discovered in her abdomen. Kathy passed away several weeks later. Kathy's estate and her husband, Steven, initiated a medical malpractice action against Genesis Health System and Dr. Olson.[1]

The matter proceeded to jury trial. The jury found Dr. Olson was not negligent and apportioned all fault to Genesis. The Hazens appeal. Additional facts will be set forth below as relevant to their claims on appeal.[2]

---

[1] The Hazens entered into an undisclosed settlement with Genesis prior to trial.

[2] During oral arguments, the Hazens made multiple attempts to discuss Dr. Olson's licensing issue and interject information outside the record. "We condemn attempts to circumvent the rules of appellate procedure and improperly develop facts that must be properly litigated through the adversarial process." *Curry v. State*, No. 23-0533, 2024 WL 1551272, at *2 (Iowa Ct. App. Apr. 10, 2024). We reiterate, any outside-the-record factual statements provided in appellate briefs or during oral arguments will be disregarded by our court. *See In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us, and any matters outside the record on appeal are disregarded."); *see also*

## II.     Evidence of "Other Lawsuits, Disciplinary Matters, or Claims"

Dr. Olson testified at trial for his defense, providing expert opinions on causation and standard of care.  Prior to trial, Dr. Olson filed a motion in limine, requesting exclusion of

> any evidence of any other claims or suits or administrative/ disciplinary matters against [Dr. Olson] whose care is, or maybe, at issue in this case. . . .  Dr. Olson has prior administrative matters in both Iowa and Illinois arising out of prior medical negligence cases that were settled and/or dismissed.  To allow questioning on those matters would unfairly prejudice Dr. Olson and bring other cases of alleged wrongdoing into this case.

At hearing on the motion in limine, Dr. Olson reiterated his claim, seeking to prohibit the Hazens from introducing "any disciplinary matters against Dr. Olson, as well as any of these prior cases, as they would be irrelevant, immaterial, and unfairly prejudicial pursuant to Iowa Rule of Evidence 5.401 and 5.402."

The Hazens countered, stating "Dr. Olson in this case has submitted a written opinion that he himself did not breach any standard of care.  He's serving as his own expert.  It's highly relevant to his qualifications as an expert."  The Hazens further argued:

> This also, quite frankly, Your Honor, is a case of first impression in the fact that we have a civil case, we have a named defendant who is also serving, as opined, as an expert to testify about his own breach or lack thereof.  So in this case the fact is, which I don't think [defense counsel] mentioned, is after [Dr. Olson] was sanctioned by the Iowa Medical Board, he must be monitored.  He must be monitored.  His surgical files or procedures are subject to monitoring, and that is relevant because it goes to his qualifications to serve as an expert on his own behalf . . . .
> So he's gone beyond a treater.  He's now saying that he's an expert, and that goes to his qualifications, and that's why it's relevant.

---

*Curry*, 2024 WL 1551272, at *2 ("We remind Curry's appellate counsel to not inject outside-the-record factual material into an appellate brief in the future.").

And the fact is that he's being monitored at this point.  He may not have lost his license—

. . . .

So what we're saying is, we're not offering it to show that somehow because of his actions in previous matters that he acted in conformance with whatever occurred before.  We're saying that it's relevant to his qualifications as an expert.  He's designated himself as his own expert.  That's why it's relevant. . . .

So it is relevant, highly relevant, and that's why we submit that when Dr. Olson takes the stand as not just a treater, but as his own expert, we can delve into that in the fact that, isn't it true, Dr. Olson, that your surgical cases or your cases are being monitored by the Iowa—or pursuant to the Iowa Medical Board.  That is relevant.

Ultimately, the district court ruled evidence of "any cases and any disciplinary matters" against Dr. Olson would be inadmissible.  The court explained:

I would agree that this is improper character evidence, and I think it would ultimately lead us into the muck where we are then trying multiple cases within this case.  Those cases aren't relevant, and any relevant material that would come from this issue is far outweighed by the prejudicial effect that the implications of these prior matters would have on the jury.

The court revisited its ruling at trial, following the Hazens' offer of proof, stating:

Pursuant to the prior ruling on the motion in limine, the offer of proof and the contents thereof are more prejudicial, and the prejudicial effect outweighs the probative effect, if any, that this information and this discussion would have.  So this information is excluded and counsel may not go into it.

On appeal, the Hazens challenge the district court's ruling on this issue.[3]

We review the court's evidentiary rulings for an abuse of discretion.  *See Buboltz v. Birusingh*, 962 N.W.2d 747, 757 (Iowa 2021).  A district court abuses its

---

[3] The State filed an amicus brief limited to issues involving professional licensing, including a concern that admission of evidence of license discipline in civil suits resulting from stipulated settlements may have a collateral impact on physicians' willingness to enter such settlements in disciplinary cases.

discretion when its decision rests on grounds or on reasons clearly untenable or to an extent clearly unreasonable. *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 160 (Iowa 2004). The abuse-of-discretion standard means "we give a great deal of leeway to the trial judge who must make [a] judgment call." *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006).

> A [party] is given "reasonable latitude" in cross-examin[ation]. The trial court, however, still exercises its sound discretion in determining the scope of cross-examination. A witness's credibility is placed in issue when that witness testifies. Therefore, a defendant may question the credibility of a State's witness by attempting to impeach the witness by proper cross-examination. Cross-examination may include impeachment by inquiry into specific instances of conduct.

*State v. Gear*, No. 14–1556, 2016 WL 351405, at *2 (Iowa Ct. App. Jan. 27, 2016) (internal citations and quotation marks omitted).

Irrelevant evidence is inadmissible. Iowa R. Evid. 5.402. And even if relevant, evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403. We employ a two-part test to decide whether evidence should be excluded under rule 5.403. *See State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013). First, we "consider the probative value of the evidence." *Id.* Second, we balance the probative value "against the danger of its prejudicial or wrongful effect upon the triers of fact." *Id.*

The Hazens claim evidence of Dr. Olson's professional discipline was relevant to his professional qualifications and was particularly necessary because Dr. Olson "provided expert opinions regarding the standard of care and causation that conflicted with [the Hazens'] experts." The Hazens further claim the evidence

was not unfairly prejudicial, because they only sought to introduce evidence of the discipline itself—the fine and two years of monitoring—rather than details of the underlying allegations.[4]

The Hazens rely on the Illinois Court of Appeals' decision in *Cetera v. DiFilippo* to support their claim. *See* 934 N.E.2d 506, 513–20 (Ill. App. Ct. 2010). In that case, the plaintiff retained an expert witness (a physician specializing in internal medicine and infectious diseases) to opine about another physician's negligent diagnosis. *See id.* at 513. The district court allowed defense counsel to cross-examine the witness concerning a reprimand on his medical license for "failure to recognize the presence of microhematuria in a patient." *See id.* at 517, 520. The court of appeals affirmed the district court's evidentiary ruling, reasoning the reprimand was relevant because it reflected on the witness's "qualifications and had some tendency to lessen his credibility as an expert." *Id.* at 520.

---

[4] Specifically, the Hazens' offer of proof provided:

> Q [HAZENS' ATTORNEY]. Okay. Now, I would like to ask you the follow[ing] questions for this offer of proof. To begin with, are you a licensed physician currently in the state of Iowa? A [DR. OLSON]. Yes.
>
> Q. Were you disciplined by the Iowa Medical Board sometime in December of 2022? A. Yes.
>
> Q. What was the nature of your—of the discipline you received from the Iowa Medical Board? A. Do you—are you asking what they were disciplining me for, or what was the result of the discipline, what were they disciplining me with?
>
> Q. No, I'm not asking what cases or patients you were disciplined for, but what was the end result, the disciplinary action? A. I was fined $5000 and for two years I'm on probation. And what that means basically is that any general surgery cases that I do, I discuss with a general surgeon colleague that has been agreed to upon by the Board, will review five to ten percent of my cases, and that physician or surgeon will report to the Board on a quarterly basis.

Here, however, unlike the specific evidence admitted in *Cetera*, the Hazens' offer of proof included no information regarding the basis for Dr. Olson's disciplinary matters. Because the proffered evidence did not relate to Dr. Olson's medical knowledge or medical care, the district court did not abuse its discretion in concluding it was not was relevant. *See Gear*, 2016 WL 351405, at *4 (affirming the court's exclusion of ethical complaints unrelated to the physician witness's "ability to treat or diagnose his patients" but rather "a decades old substance abuse issue (that did not occur while he was providing care to Gear) and . . . inappropriate behavior at work," concluding the complaints were not relevant to the witness's credibility). Nor did the court abuse its discretion in finding evidence of the disciplinary matters would have been more prejudicial than probative if submitted to the jury. *See id.* We affirm on this issue.

### III. *Jury Instruction*

The jury was instructed to ascertain whether Dr. Olson "was negligent in one or more of the following ways":

> a. By failing to place a clip, tie, or endoloop on Kathy Hazen's cystic artery on February 8, 2016; or
> b. By failing to place a clip, tie or endoloop on Kathy Hazen's cystic duct on February 8, 2016; or
> c. By failing to immediately identify and address the possibility of internal bleeding on February 15, 2016 or February 16, 2016; or
> d. By failing to order a paracentesis to test the fluid in Kathy's abdomen on February 15, 2016 or February 16, 2016; or
> e. By failing to communicate with Hospitalists at Genesis regarding the management of Kathy Hazen's anticoagulation medication on February 15, 2016 or February 16, 2016; or
> f. By failing to examine Kathy Hazen on February 15, 2016.

Over the Hazens' objection, the jury also received the following alternative-methods-of-treatment instruction:

Physicians may disagree in good faith upon what would be the proper treatment or diagnosis of a medical condition in a given situation. It is for the physician to use his or her professional judgment to select which recognized method of treatment or diagnosis to use in a given situation. If you determine that there were two or more recognized alternative courses of action which have been recognized by the medical profession as being within the standard of care, and one or more of the defendant physicians, in the exercise of their best judgment, elected one of those proper alternatives, then such physician was not negligent.

On appeal, the Hazens claim the court erred in submitting the alternative-methods-of-treatment instruction because alternative treatments were not at issue.[5] According to the Hazens, there was no dispute by any of the experts that a laparoscopic cholecystectomy was the only treatment option for Kathy's gallbladder removal. The Hazens claim "[t]he disputed issues related to *how* Dr. Olson conducted the surgery and his care of [Kathy] after the treatment," which "were standard of care issues, *not* alternative treatment issues."

Challenges to jury instructions are reviewed for correction of errors at law. *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). A reversal is required for giving or refusing a jury instruction only if there has been prejudice. *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018). Prejudice results when jury instructions mislead the jury or materially misstate the law. *Id.*

The alternative-methods-of-treatment instruction embodies the notion that differing doctors may disagree in good faith upon what would encompass the proper treatment . . . of a medical problem in a given situation. Medicine is not a field of absolutes. There is not ordinarily only one correct route to be followed at any given time.

---

[5] Contrary to Dr. Olson's contention, we find the Hazens preserved error on this claim.

*Kammeyer v. Cedar Valley Podiatry, P.C.*, No. 22-0850, 2023 WL 4531725, at *4 (Iowa Ct. App. July 13, 2023); *accord Est. of Smith v. Lerner*, 387 N.W.2d 576, 581 (Iowa 1986).

The Hazens essentially concede there were disputed issues relating to "everything that happened after [Kathy's] gallbladder surgery."[6] But they claim any dispute relating to Dr. Olson's diagnostic decisions or examinations of Kathy following her surgery do not constitute "alternative methods of treatment" because the only "treatment" at issue was Kathy's underlying surgical procedure.

This position was rejected by our supreme court in *Vachon v. Broadlawns Med. Found.*, 490 N.W.2d 820 (Iowa 1992). There, the court "recognize[d] the definition of treatment is a broad term covering all the steps taken to effect a cure of an injury or disease, including examination and diagnosis." *Vachon*, 490 N.W.2d at 823. Specifically, although the court "agree[d] fasciotomy is the only proper treatment of compartment syndrome," it "disagree[d] with [the plaintiff's] limited characterization of the treatment issue as encompassing only the required surgical procedure." *Id.* The court determined there were disputed issues relating to the diagnosis of the plaintiff's condition, as well as the decision where to transfer the plaintiff for care. *See id.*; *Tripp v. Cedar Valley Med. Specialists, P.C.*, No. 05-1123, 2006 WL 2560844, at *4–5 (Iowa Ct. App. 2006) ("The record reveals that a closed reduction and a surgical repair are recognized treatment methods for the type of wrist injury suffered by Tripp."). Similarly, here, there were several

---

[6] For example, the Hazens acknowledged, "Whether or not you can do a paracentesis, . . . it serves a diagnostic purpose . . . . The same way with the CT scan. . . . And whether or not to use clips goes to expert testimony."

treatment issues in dispute between the experts. For instance, as the court observed, the Hazens' expert "says that the paracentesis should have been done. Dr. Olson says, no, that's an outdated procedure, the CT was good enough." The court further found, "So it's the [competing opinions about the] diagnosis and the treatment following. It's not just the gallbladder surgery we're talking about here."

The evidence presented at trial, as well as the Hazens' admissions, provides substantial support for submitting an alternate-methods-of-treatment instruction to the jury and we find no prejudicial error in the court's submission of the challenged instruction in this case. *See Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019); *but see In re Est. of Ellerie v. Cloos*, No. 22-0537, 2023 WL 2673262, at *3 (Iowa Ct. App. Mar. 29, 2023) (finding an alternative-methods-of-treatment instruction "misled the jury by its phrasing" because the "removal of the if/then phrasing in instruction sixteen effectively and improperly turned the instruction into a directive to the jury and foreclosed its ability to determine whether the elements of the marshalling instruction were met"). We affirm on this issue.

## IV.    *Prejudicial Misconduct*

The Hazens claim the district court acted with "prejudicial misconduct" in denying their motion to strike three prospective jurors, ignoring the Hazens' brief on improper rehabilitation of jurors, and expressing bias against the Hazens' attorney. We find these claims are either waived or unpreserved for review. Insofar as they were properly presented, we would review them for abuse of discretion. *See State v. Jonas*, 904 N.W.2d 566, 570–71 (Iowa 2017).

Regarding the juror issues, the Hazens fail to show how the court's rulings tainted the outcome of this case. The Hazens acknowledge they were ultimately able to keep the prospective jurors off the jury panel using peremptory challenges. The Hazens present no evidence to show the prospective jurors impacted the jurors who did sit on the panel. Nor do the Hazens present authority to show how this type of alleged judicial misconduct would warrant overturning the jury's verdict.[7]

Regarding the court's demeanor and bias, the Hazens allege instances the court made facial expressions, used frustrated or patronizing tones with counsel, interrupted counsel during questioning to take breaks,[8] and instructed the jury to disregard the estate's demonstrative in the middle of its closing. The Hazens also claim the court showed bias in favor of Dr. Olson during the entire trial. However, the Hazens failed to raise these claims before the court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Nor did the Hazens raise authority supporting their claim on appeal. They cite only *State v. Gentile*, in which our supreme court stated, "[A] trial judge should not telegraph to a jury, by purposeful exclamations, gestures or facial expressions, the judge's approval or disapproval, belief or disbelief, in the testimony of

---

[7] Regarding the briefing issue, the Hazens claim the court seemed to be "focus[ed] on speed rather than getting decisions right." Again, the Hazens do not allege any authority or support for how such action should be remedied.

[8] We observe the court made it clear when the proceeding would adjourn for breaks, stating the breaks would occur every day at 10:30 a.m., between 12:00 p.m. and 1:30 p.m., and around 3:00 p.m.

witnesses or arguments of counsel." 515 N.W.2d 16, 18 (Iowa 1994). Here, the record does not support a finding of any alleged misconduct by the court, or that such conduct was prejudicial to the Hazens' case. *See In re Marriage of Ihle*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998) (noting district courts have discretion on matters relating to the course and conduct of a trial).

In sum, we affirm the judgment entered by the district court on the jury's verdict in favor of Dr. Olson in the Hazens' medical malpractice action.

**AFFIRMED.**